UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────── x

FERGUSON FAMILY TRUST, On Behalf of  :  Civil Action No.
Itself and All Others Similarly Situated,

                                     :

                    Plaintiff,       :  CLASS ACTION

                                     :

          vs.                        :

                                     :
FALCON STRATEGIES TWO LLC,           :
AMACAR GP, INC., CITIGROUP           :
ALTERNATIVE INVESTMENTS LLC,         :
CITIGROUP, INC. and REAZ ISLAM,      :

                                     :

                    Defendants.      :

                                     :
───────────────────────────────── x


MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATIONS BY ORDER TO SHOW CAUSE
FOR EXPEDITED DISCOVERY AND A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ...................................................................1

II.   STATEMENT OF FACTS ........................................................................3

III.  ARGUMENT..........................................................................................4

    A.    Plaintiff Satisfies the Requirements for Injunctive Relief.......................................4

    B.    Plaintiff Will Suffer Irreparable Harm if It is Forced to Tender Its Shares Without Full and Accurate Disclosure......................................................................5

    C.    Plaintiff Can Establish a Likelihood of Success on the Merits...............................9

        a.    The Memorandum Violates the Exchange Act................................9

            (1)    The Complaint Particularizes the Statements and Omissions of Material Fact that Are Misleading..............12

            (2)    The Complaint Sets Forth Why the Statements and Omissions Were Misleading When Made .........................16

            (3)    Defendants Knowingly or Recklessly Violated the Federal Securities Laws ......................................................17

        b.    The Memorandum Violates Delaware Law...................................19

    D.    Plaintiff Has Raised Sufficiently Serious Questions Going to the Merits and Can Show that the Hardships are Balanced Against It ...................................21

        1.    Plaintiff Has Raised Serious Questions Going to the Merits....................21

        2.    The Hardships Are Balanced Against Plaintiff............................................22

    E.    A Bond Is Not Necessary Under the Circumstances ...............................................24

    F.    Limited Expedited Discovery is Required to Provide the Court With a Complete Record on Plaintiff's Injunction Motion .................................................24

IV.   CONCLUSION.........................................................................................27

# TABLE OF AUTHORITIES

Page

## CASES

*Abdul Wali v. Coughlin,*
  754 F.2d 1015 (2d Cir. 1985).................................................................................9

*Albert v. Alex. Brown Mgmt. Servs., Inc.,*
  No. 762-N, 2005 Del. Ch. LEXIS 133
  (Del. Ch. Aug. 26, 2005)......................................................................................14

*American Insured Mortg. Investors v. CRI, Inc.,*
  No. 90 Civ. 6630 (MBM), 1990 U.S. Dist. LEXIS 15787
  (S.D.N.Y. Nov. 26, 1990) ............................................................................. *passim*

*Arnold v. Society for Sav. Bancorp., Inc.,*
  650 A.2d 1270 (Del. 1994) .............................................................................19, 20

*Ayyash v. Bank Al-Madina,*
  233 F.R.D. 325 (S.D.N.Y. 2005) .........................................................................25

*Bakerman v. Sidney Frank Importing Co.,*
  No. 1844-N, 2006 Del. Ch. LEXIS 180
  (Del. Ch. Oct. 10, 2006).......................................................................................19

*Blanchette v. Providence & Worcester Co.,*
  428 F. Supp. 347 (D. Del. 1977).........................................................................19

*Borey v. National Union Fire Ins. Co.,*
  934 F.2d 30 (2d Cir. 1991).....................................................................................8

*Broder v. Dane,*
  384 F. Supp. 1312 (S.D.N.Y. 1974)............................................................. *passim*

*Brown v. New York City Health & Hosps. Corp. Emergency Med. Serv.,*
  No. 96-CV-0156, 1996 U.S. Dist. LEXIS 22451
  (S.D.N.Y. Feb. 12, 1996) ...................................................................................4, 8

*Connecticut Nat'l Bank v. Fluor Corp.,*
  808 F.2d 957 (2d Cir. 1987).................................................................................11

*Consolidated Gold Fields PLC v. Minorco, S.A.,*
  871 F.2d 252 (2d Cir. 1989)...................................................................................7

*Continental Oil Co. v. Frontier Refining Co.,*
  338 F.2d 780 (10th Cir. 1964) .............................................................................24

**Page**

Doctor's Assocs. v. Distajo,
107 F.3d 126 (2d Cir. 1997), cert. denied, 522 U.S. 948 (1997).......................24

E.H.I. of Florida, Inc. v. Insurance Co. of N. America,
652 F.2d 310 (3d Cir. 1981)...........................................................................10

Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.,
No. 99 CIV 10517 (HB), 1999 U.S. Dist. LEXIS 16996
(S.D.N.Y. Nov. 2, 1999) .................................................................6, 8, 9, 23

Fireman's Fund Ins. Co. v. Leslie & Elliott Co., Inc.,
867 F.2d 150 (2d Cir. 1989)..............................................................................4

Freedman v. Restaurant Assocs. Indus., Inc.,
No. 9212, 1990 Del. Ch. LEXIS 142
(Del. Ch. Sept. 21, 1990) ..............................................................................19

Gatz v. Ponsoldt,
925 A.2d 1265 (Del. 2007) ............................................................................20

Gulf & W. Indus., Inc. v. Great Atlantic & Pac. Tea Co.,
476 F.2d 687 (2d Cir. 1973)..................................................................... passim

Iannucci v. The Segal Co.,
06 Civ. 4720 (PKL), 2006 U.S. Dist. LEXIS 43339
(S.D.N.Y June 26, 2006)..................................................................................9

Iavarone v. Raymond Keyes Assoc., Inc.,
733 F. Supp. 727 (S.D.N.Y. 1990) ..................................................................8

In re Netsmart Techs., Inc. S'holders Litig.,
924 A.2d 171 (Del. Ch. 2007)..........................................................................5

In re Nortel Networks Corp. Sec. Litig.,
238 F. Supp. 2d 613 (S.D.N.Y. 2003)............................................................18

In re Oxford Health Plans, Inc. Sec. Litig.,
187 F.R.D. 133 (S.D.N.Y. 1999) ...................................................................16

In re Par Pharm., Inc. Sec. Litig.,
733 F. Supp. 668 (S.D.N.Y. 1990) ................................................................16

In re PHLCORP Sec. Tender Offer Litig.,
700 F. Supp. 1265 (S.D.N.Y. 1988)...............................................................13

**Page**

*In re Primedia Inc., Derivative Litig.,*
    910 A.2d 248 (Del. Ch. 2006)........................................................................20

*In re Pure Resources, Inc. S'holders Litig,*
    808 A.2d 421 (Del. Ch. 2002)...................................................................6, 20

*In re Scholastic Corp. Sec. Litig.,*
    252 F.3d 63 (2d Cir. 2001)...........................................................................17

*In re Staples, Inc. S'Holders Litig.,*
    792 A.2d 934 (Del. Ch. 2001)......................................................................22

*In re Time Warner, Inc. Sec. Litig.,*
    9 F.3d 259 (2d Cir. 1993), *cert. denied*, 511 U.S. 1017 (1994).........................16

*In re Vivendi Universal, S.A. Sec. Litig.,*
    381 F. Supp. 2d 158 (S.D.N.Y. 2003).............................................................16

*Kahn v. Lynch Commc'n Sys., Inc.,*
    638 A.2d 1110 (Del. 1994) ...........................................................................20

*KeyBank, Nat'l Ass'n v. Quality Payroll Sys., Inc.,*
    No. CV 06-3013 (JS) (AKT), 2006 U.S. Dist. LEXIS 42078
    (S.D.N.Y. June 22, 2006)..............................................................................25

*L.P. Acquisition Co. v. Tyson,*
    772 F.2d 201 (6th Cir. 1985) ........................................................................10

*La. Mun. Police Employees Ret. Sys. v. Crawford,*
    Civil Action No. 2635-N, 2007 Del. Ch. LEXIS 28
    (Del. Ch. Feb. 13, 2007) ...............................................................................24

*Langner v. Brown,*
    913 F. Supp. 260 (S.D.N.Y. 1996) ...............................................5, 11, 12, 13

*Lichtenberg v. Besicorp Group,*
    43 F. Supp. 2d 376 (S.D.N.Y. 1999)................................................................6

*Loudon v. Archer-Daniels-Midland Co.,*
    700 A.2d 135 (Del. 1997) .............................................................................19

*Lynch v. Vickers Energy Corp.,*
    383 A.2d 278 (Del. 1977) .......................................................................13, 19

**Page**

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ........................................................................20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
    194 F.R.D. 618 (N.D. Ill. 2000) ...............................................................25

*Metro Commun. Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
    854 A.2d 121 (Del. Ch. 2004)......................................................................7

*Netwolves Corp. v. Sullivan*,
    No. 00 Civ. 8943 (AGS), 2001 U.S. Dist. LEXIS 5905
    (S.D.N.Y. May 9, 2001)................................................................................8

*Notaro v. Koch*,
    95 F.R.D. 403 (S.D.N.Y. 1982) ................................................................25

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)................................................................17, 18

*O'Lone v. Estate of Shabazz*,
    482 U.S. 342 (1987).....................................................................................9

*ODS Techs., L.P. v. Marshall*,
    832 A.2d 1254 (Del. Ch. 2003)..................................................................22

*OMG Fidelity, Inc. v. Sirius Tech., Inc.*,
    239 F.R.D. 300 (N.D.N.Y. 2006) ..............................................................24

*Ortsman v. Green*,
    No. 2670-N, 2007 Del. Ch. LEXIS 29
    (Del. Ch. Feb. 28, 2007) ...........................................................................25

*Panter v. Marshall Field & Co.*,
    646 F.2d 271 (7th Cir. 1981), *cert. denied*, 454 U.S. 1092 (1981).......................8

*Phillips v. Insituform of N. Am., Inc.*,
    No. 9173, 1987 Del. Ch. LEXIS 474
    (Del. Ch. Aug. 27, 1987)..............................................................................7

*Piper v. Chris-Craft Indus., Inc.*,
    430 U.S. 1 (1977).......................................................................................10

*Reuters Ltd. v. United Press Int'l, Inc.*,
    903 F.2d 904 (2d Cir. 1990).........................................................................5

**Page**

RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,
    185 F. Supp. 2d 389 (S.D.N.Y. 2002)........................................................................15, 18

Schreiber v. Burlington N., Inc.,
    472 U.S. 1 (1985)........................................................................................................10

SEC v. National Sec., Inc.,
    393 U.S. 453 (1969)....................................................................................................10

SEC v. Texas Gulf Sulphur Co.,
    401 F.2d 833 (2 Cir. 1968)..........................................................................................10

Shell Petroleum, Inc. v. Smith,
    606 A.2d 112 (Del. 1992) ...........................................................................................19

Simon Debartolo Group, L.P. v. Gordon Altman Butowsky Weitzen Shalov & Wein,
    186 F.3d 157 (2d Cir. 1999)..........................................................................................5

Sonesta Int'l Hotels Corp. v. Wellington Assoc.,
    483 F.2d 247 (2d Cir. 1973)..........................................................................5, 7, 16, 22

Sonet v. Plum Creek Timber Co., L.P.,
    C.A. No. 16931, 1999 Del. Ch. LEXIS 49
    (Del. Ch. Mar. 18, 1999)................................................................................................5

Standard Investment Chartered, Inc. v. NASD, Inc.,
    No. 07 Civ. 2014 (SWK), 2007 U.S. Dist. LEXIS 27342
    (S.D.N.Y. Apr. 11, 2007)........................................................................................24, 25

Stern v. Cosby,
    246 F.R.D. 453 (S.D.N.Y. 2007) ............................................................................24, 25

Stroud v. Grace,
    606 A.2d 75 (Del. 1992) .............................................................................................19

Telenor E. Invest AS v. Altimo Holdings & Inv. Ltd.,
    No. 07 Civ. 4829 (DC), 2008 U.S. Dist. LEXIS 23458
    (S.D.N.Y. Mar. 25, 2008) ............................................................................................11

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    __ U.S. __, 127 S. Ct. 2499 (2007)........................................................................17, 18

United States v. Chestman,
    947 F.2d 551 (2d Cir. 1991), cert. denied, 503 U.S. 1004 (1992)......................................9

Page

*Waltree Ltd. v. ING Furman Selz LLC*,
  97 F. Supp. 2d 464 (S.D.N.Y. 2000)..................................................................16

*Weinberger v. UOP, Inc.*,
  457 A.2d 701 (Del. 1983) ...............................................................................13

*Wenner Media LLC v. N. & Shell N. Am. Ltd*,
  No. 05 Civ. 1286 (CSH), 2005 U.S. Dist. LEXIS 1925
  (S.D.N.Y. Feb. 8, 2005) ...........................................................................5, 6, 21

## STATUTES, RULES AND REGULATIONS

6 Del. C. §18-803(b) .............................................................................................7

15 U.S.C.
  §78n(e) ............................................................................................................10

Securities Exchange Act of 1934
  10(b)........................................................................................................ *passim*
  14(a).....................................................................................................................6
  14(e) ....................................................................................................... *passim*

17 C.F.R.
  §240.10b-5 ..................................................................................1, 5, 10, 11
  §240.14e-3 ......................................................................................................9

Plaintiff Ferguson Family Trust ("Plaintiff") respectfully submits this memorandum of law in support of its motion by order to show cause: (i) pursuant to Fed. R. Civ. P. 65, for a preliminary injunction enjoining a tender offer (the "Tender Offer") commenced by defendant Falcon Strategies Two LLC ("Falcon"), pursuant to which Falcon seeks to acquire its outstanding "shares," until Defendants[1] disclose all material information to investors; and (ii) granting limited expedited discovery in advance of the preliminary injunction hearing.

## I.    PRELIMINARY STATEMENT

This class action is brought pursuant to Section 10(b) of the Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, as well as Section 14(e) of the Exchange Act and Delaware law, on behalf of a class of investors who have tendered or are being asked to tender their shares to Falcon in the Tender Offer on the basis of materially misleading statements and omissions. Boiled down to its simplest terms, this case is yet another in a recent line of cases in which investors were induced to purchase interests in what was initially represented as a conservative investment that would provide "absolute returns, current income and portfolio diversification." In actuality, Defendants knowingly or recklessly employed risky investment strategies that included municipal bond arbitrage and the purchase of commercial debt obligations. When the credit and municipal bond markets tightened and ultimately dried up, as Defendants had reason to believe they would, the value of the assets underlying the shares that Plaintiff and other investors had purchased precipitously declined in value, wiping out the value of their investments. The continued volatility of the markets, coupled with Defendants' indefinite discontinuation of the redemption of member's

---

[1]    Defendants are Falcon; its sole managing member, AMACAR GP, Inc. ("AMACAR"); Citigroup, Inc. ("Citigroup"); Citigroup Alternative Investments LLC ("CAI"), a Citigroup subsidiary and Falcon's investment manager; and Reaz Islam ("Islam"), who ran Falcon for CAI.

shares and the lack of a public trading market for them, means that these investors cannot recoup a substantial portion of the losses they suffered.

Seizing on these circumstances, Falcon, at the behest of Citigroup and CAI (which control the Company), has commenced the Tender Offer in an effort to repurchase the shares without all material information while ensuring that investors cannot pursue legal claims against them. To implement this scheme, Defendants disseminated a Confidential Tender and Exchange Offer Memorandum on May 8, 2008 (the "Memorandum," cited as "Mem. at p.__") that, *inter alia*, fails to adequately apprise investors of, *inter alia*, the present-day value of their shares or the underlying assets upon which they are valued, the true makeup of the assets, or the means by which to value the consideration offered in the Tender Offer. The Memorandum also fails to disclose that Falcon all but abandoned the supposedly conservative investment strategies that induced investors to purchase the shares in the first place, resulting in the massive losses that have now prompted Defendants to initiate the Tender Offer and pursue a planned liquidation of Falcon's assets – a course of action that will leave investors with no recourse against Falcon, through litigation or otherwise.

In fact, Defendants have attempted to preclude any attempt by investors to bring a claim against them by expressly conditioning Falcon's obligation to accept any tendered shares on the investors' agreement to a wide-ranging general release of any conceivable claim against Defendants and numerous other third-parties. In the process, however, Defendants have once again failed to disclose adequate information to permit investors to appreciate the nature and scope of the claims they will be releasing. Investors are thus left with the illusory option of retaining shares in Falcon without having sufficient information to value them or the Company's underlying assets (and no option to sell the shares in an open market), while at the same time faced with a decision of whether to tender their shares and relinquish any claim against Defendants and others in the process.

Moreover, those investors who have already tendered their shares were fraudulently induced to do so as a result of the misleading statements and omissions contained in the Memorandum.

Accordingly, Plaintiff respectfully requests the Court to grant limited expedited discovery to render a complete record in connection with Plaintiffs' preliminary injunction motion, and to enjoin the Tender Offer until Defendants make supplemental disclosures to investors in order to prevent the irreparable harm that will surely befall investors in the absence of such relief.[2]

## II.    STATEMENT OF FACTS

Falcon is a Delaware limited liability company that was formed by Citigroup to serve as a multi-strategy fixed income alternative seeking to provide investors with "absolute returns, current income and portfolio diversification." *See* Mem. at p.2.[3]  In exchange for a substantial monetary investment by Plaintiff and other investors who Defendants knew to be interested in conservative yet income-producing investment strategies, Falcon issued units of a series of limited liability company interests (or "shares") to them.[4] Falcon's sole managing member, AMACAR, delegated substantially all authority to CAI (and hence Islam), as investment manager, to manage the Company's operations and assets, *see* Mem. at p.15, and Citigroup and CAI have indicated that they will liquidate the Company's assets within the next twelve to eighteen months. *See id*. p.3

---

[2]      A Proposed Order that provides the requested relief is annexed as Exhibit A to the Affidavit of Samuel H. Rudman, Esq., sworn to on May 20, 2008.  All exhibits are annexed thereto.

[3]      Copies of the Complaint and Memorandum are annexed as Exhibit B and C, respectively.

[4]      Plaintiff acquired and holds 2005 Series 3-A shares in Falcon, although Falcon issued nine series of shares in total.  Although the nine series aggregately comprise Portfolio "A" of Falcon's investments, it appears that the Company has not issued any shares for Portfolio "B."

In connection with winding-up the Company's operations, Defendants disseminated the Memorandum in connection with the Tender Offer. As alleged in the Complaint, however, the Memorandum contains misleading statements and omissions regarding the following material issues:

- The present and potential value of the Company's assets and shares, as well as the makeup of those assets and the Company's individual investments;

- The nature of any claims that Defendants are requiring investors to release as a condition to the acceptance of any tendered shares (the "Release");

- The nature, scope and subject matter of the U.S. regulatory inquiry to which Citigroup is responding as well any related civil litigation; and

- The events leading up to the investors' massive losses, the Tender Offer and the wind-up and liquidation of the Company's assets and operations.

By this application, Plaintiff respectfully requests the Court to permit limited expedited discovery and enjoin the Tender Offer until such time as Defendants issue adequate information for investors to make an informed decision with respect to whether to tender their shares.

## III.  ARGUMENT

### A.    Plaintiff Satisfies the Requirements for Injunctive Relief

To establish an entitlement to injunctive relief in this Circuit, a movant must demonstrate irreparable harm and either a "likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward" such movant. *Brown v. New York City Health & Hosps. Corp. Emergency Med. Serv.*, No. 96-CV-0156, 1996 U.S. Dist. LEXIS 22451, at *3-4 (S.D.N.Y. Feb. 12, 1996) (citing *Fireman's Fund Ins. Co. v. Leslie & Elliott Co., Inc.*, 867 F.2d 150 (2d Cir. 1989)). As the Second Circuit has recognized in the context of a Section 14(e) claim directed to a tender offer, "preliminary injunctive relief is a particularly useful remedy for prevention of probable violations of the disclosure requirements of the [Williams] Act, for the reason that prior to consummation of the offer the court still has a variety of methods available to it for correction of the misstatements or

- 4 -

omissions." *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 250 (2d Cir. 1973);

*accord Gulf & W. Indus., Inc. v. Great Atlantic & Pac. Tea Co.*, 476 F.2d 687, 696 (2d Cir. 1973).

Courts in this Circuit have also held that injunctive relief is appropriate to address a claim

arising under Section 10(b) and Rule 10b-5 based on misleading disclosures. *See, e.g., Langner v.

Brown*, 913 F. Supp. 260, 270 (S.D.N.Y. 1996) (refusing to dismiss a Section 10(b) claim for

injunctive relief where the allegedly misleading disclosures concerned the valuation of a company's

assets); *see also Simon Debartolo Group, L.P. v. Gordon Altman Butowsky Weitzen Shalov & Wein*,

186 F.3d 157, 171 (2d Cir. 1999) (acknowledging the availability of injunctive relief for such

claims). Likewise, Delaware courts have recognized the significance of injunctive relief to remedy

breaches of fiduciary duty based on inadequate disclosure to investors in the context of corporate

transactions. *See In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 207 (Del. Ch. 2007)

("By issuing an injunction requiring additional disclosure, the court gives stockholders the choice to

think for themselves on full information, thereby vindicating their rights as stockholders to make

important voting and remedial decisions based on their own economic self-interest."); *Sonet v. Plum

Creek Timber Co., L.P.*, C.A. No. 16931, 1999 Del. Ch. LEXIS 49, at *24 (Del. Ch. Mar. 18, 1999)

(holding that injunctive relief requiring corrective disclosures is appropriate to remedy disclosure

deficiencies).

Here, injunctive relief would merely maintain the status quo until investors have sufficient

information to make an independent and informed determination of whether to tender their shares.

**B.    Plaintiff Will Suffer Irreparable Harm if It is Forced to Tender Its
       Shares Without Full and Accurate Disclosure**

"To satisfy the threshold requirement of irreparable harm or injury, a movant need not

demonstrate its certainty." *Wenner Media LLC v. N. & Shell N. Am. Ltd*, No. 05 Civ. 1286 (CSH),

2005 U.S. Dist. LEXIS 1925, at *10 (S.D.N.Y. Feb. 8, 2005) (citing *Reuters Ltd. v. United Press*

- 5 -

*Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). Rather, a movant must merely show that it is *more likely than not* that he will suffer irreparable harm. *See, e.g., Wenner*, 2005 U.S. Dist. LEXIS 1925, at *10. Thus, even the threat of irreparable harm may suffice. *See Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*, No. 99 CIV 10517 (HB), 1999 U.S. Dist. LEXIS 16996, at *26 (S.D.N.Y. Nov. 2, 1999) ("Plaintiffs' inability to recover any monetary damages due to defendant's *threatened* insolvency justifies a finding of irreparable harm." (emphasis added)).

Investors will be irreparably harmed here if they are forced to decide whether to tender their shares on the basis of the Memorandum, because they do not have all material information necessary to make an informed decision – a fundamental right under both federal and Delaware law, in the context of a transaction such as the Tender Offer. *See Lichtenberg v. Besicorp Group*, 43 F. Supp. 2d 376, 390 (S.D.N.Y. 1999) (holding, in the context of an alleged violation of Section 14(a) of the Exchange Act, that "[i]rreparable injury results from the use of [materially] false and misleading proxies when the free exercise of shareholders' voting rights will be frustrated") (citation and internal quotations omitted); *In re Pure Resources, Inc. S'holders Litig*, 808 A.2d 421, 452 (Del. Ch. 2002) (holding that "irreparable injury is threatened when a stockholder might make a tender or voting decision on the basis of materially misleading or inadequate information."). This means that investors are not only unable to value their shares, but they are also unable to value their investments on a going-forward basis if they decide not to tender (or if they tender and are "accredited investors" who may elect to receive a newly-issued "participation" share as well as the offered consideration).

Moreover, investors are not just being asked to tender their shares, but they are also being forced to release any claims they may have against the Defendants, and to agree to arbitrate any dispute, in the process. *See* Mem. at p.23. These requirements are unequivocally conditioned on Falcon's acceptance of any tendered shares. *See id.* at p.iii. However, as noted herein, investors do

- 6 -

not have enough information to determine the nature of the claims they may be releasing. This concern takes on added significance when it is placed in the context of current developments: Falcon and other of Citigroup's funds are being wound-up; a class action was recently commenced (and discontinued) against one such fund; Citigroup and its affiliates are the subject of "a U.S. regulatory inquiry" relating to its funds; and nearly 90% of Falcon's assets were heavily invested in Citigroup's funds since inception, raising the possibility that investors could have claims against each of those funds. *See id.* at p.15. Thus, investors may very well have legitimate claims that they do not even know about, yet they are being required to release all such claims in order to participate in the Tender Offer.[5]

Further, once the Tender Offer closes and Citigroup and CAI begin the process of liquidating Falcon's assets, as they represented they would, it will be difficult, if not impossible, for the Court to reverse the process. Courts in the Second Circuit and Delaware have held that the difficulty in reversing a corporate transaction may constitute irreparable harm, and the threat of liquidation following the close of the Tender Offer certainly gives rise to such a concern here. *See, e.g.*, *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 261 (2d Cir. 1989) (reasoning that a denial of injunctive relief may result in irreparable harm because "once the tender offer has been consummated it becomes difficult, and sometimes virtually impossible, for a court to 'unscramble the eggs,'" citing *Sonesta*, 483 F.2d at 250); *Phillips v. Insituform of N. Am., Inc.*, No. 9173 1987 Del. Ch. LEXIS 474, at *33 (Del. Ch. Aug. 27, 1987) (injunctive relief is the "conventional remedy"

---

[5]    Also significant here is that once the Company is liquidated and dissolved as Citigroup plans, investors cannot pursue any claims against it. *See Metro Commun. Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 138 (Del. Ch. 2004) (noting that "suit generally may be brought by or against a limited liability company only until the certificate of cancellation is filed."). While Citigroup, as the entity winding-up Falcon's affairs, would retain the right to pursue such a claim, *see* 6 Del. C. §18-803(b), the likelihood of it pursuing a claim against itself is less than zero.

- 7 -

to prevent irreparable harm arising from the "the great difficulty, and perhaps practical impossibility, of returning a merged corporation to its original constituent corporations").

Finally, in the event that this Court denies injunctive relief, investors may have no other choice but to seek monetary damages for having been forced to make an uninformed decision about whether to tender their shares, because the issue of whether investors had adequate disclosure prior to tendering will be moot once the Tender Offer has closed. [6] Here, however, the availability of funds to compensate aggrieved investors in such a situation is virtually nil, because Falcon's assets will be entirely liquidated by Citigroup and CAI after the Tender Offer. Although "[h]arm is ordinarily not considered irreparable if it is fully compensable by money damages," it may nevertheless be deemed irreparable, where "it seems likely that the defendant, if not enjoined, would be unable to pay the money damages."[7] *Brown*, 1996 U.S. Dist. LEXIS 22451, at *5-6 (citing, *inter alia, Borey v. National Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991)). In *Federated Strategic Income Fund*, this Court found irreparable harm and enjoined a tender offer because the note holders who were being asked to tender would not be able to recover against the company after the tender

---

[6]    In fact, it could be argued that a claim for money damages would not arise until the Tender Offer closes, because Defendants could withdraw it without accepting any shares prior to that time. *See Panter v. Marshall Field & Co.*, 646 F.2d 271, 286 (7th Cir. 1981) (holding that Section 14(e) "does not give a damages remedy for alleged misrepresentations or omissions of material fact when the proposed tender offer never becomes effective."), *cert. denied*, 454 U.S. 1092 (1981). Moreover, even then, a tendering investor's claim for damages could only proceed if the required Release is ineffective.

[7]    This fact differentiates this case from the typical situation in which irreparable harm is absent because the movant can be made whole again at the conclusion of the litigation in the absence of injunctive relief. *See Iavarone v. Raymond Keyes Assoc., Inc.*, 733 F. Supp. 727, 731 (S.D.N.Y. 1990) (holding that "when the corporate entity will survive the proposed transaction, and will not disappear through a merger or otherwise and thereby become immune to liability, courts should refrain from entering injunctive relief."). As noted above, here, a "money judgment" against Falcon will be rendered worthless in the absence of injunctive relief. *See Netwolves Corp. v. Sullivan*, No. 00 Civ. 8943 (AGS), 2001 U.S. Dist. LEXIS 5905, at *35 (S.D.N.Y. May 9, 2001) (holding that "where the defendant is insolvent, or may become insolvent during the pendency of the litigation, monetary injury is deemed irreparable because the plaintiff may never be able to recover damages.").

offer closed, due to its "planned insolvency" as the result of a reorganization. 1999 U.S. Dist. LEXIS 16996, at *24-25. There, the company intended to "transfer all of its assets" after the close of the tender offer, "effectively guarantee[ing] insolvency" and precluding a subsequent monetary recovery. *Id.* at *25. So too, here, a dissipation of assets through the planned liquidation would render the Company judgment-proof.

### C.    Plaintiff Can Establish a Likelihood of Success on the Merits

As with irreparable harm, a movant need not establish a likelihood of success to an absolute certainty, but must merely show that he is more likely to succeed than not. *Iannucci*, 2006 U.S. Dist. LEXIS 43339, at *13. However, unlike irreparable harm, a likelihood of success may be established even where there is "'considerable room for doubt.'" *See Iannucci v. The Segal Co.*, 06 Civ. 4720 (PKL), 2006 U.S. Dist. LEXIS 43339, at *13 (S.D.N.Y June 26, 2006) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *overruled on other grounds*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)). Here, Plaintiff can demonstrate that the Memorandum that Defendants issued in connection with the Tender Offer violates the federal securities laws and fiduciary duties arising under Delaware law.[8]

#### a.    The Memorandum Violates the Exchange Act

"[T]he disclosure requirements of the securities laws require 'nothing more than the disclosure of basic facts so that outsiders may draw upon their own evaluative experience in reaching their own investment decisions with knowledge equal to that of the insiders.'" *Gulf*, 476 F.2d at 697

---

[8]    Citigroup's possession of inside information regarding the Company, coupled with its participation in the Tender Offer by receiving newly issued shares simultaneously with the Company's acceptance of shares from investors, may also run afoul of Rule 14e-3(a), promulgated by the SEC under Section 14(e), which prohibits insider trading in the context of a tender offer. *See United States v. Chestman*, 947 F.2d 551, 557 (2d Cir. 1991) (applying 17 C.F.R. §240.14e-3), *cert. denied*, 503 U.S. 1004 (1992).

(quoting *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2 Cir. 1968)). Sections 10(b) and 14(e) of the Exchange Act satisfy this purpose, and Plaintiff properly invokes them here, where Defendants – Company insiders who are privy to non-public information – are asking investors to tender their shares on the basis of misleading information. Moreover, because the Company is directing the Tender Offer to its own investors, "it is wholly consonant with congressional intent to place a heavier burden of disclosure and fair dealing . . . than would be justified were this a case involving a contested tender offer." *Broder v. Dane*, 384 F. Supp. 1312, 1318 (S.D.N.Y. 1974) (applying Section 14(e)).

Section 10(b) and Rule 10b-5 prohibit the making of a false or misleading statement or omission in connection with the purchase or sale of a security, including tender offer and other transactions. *See SEC v. National Sec., Inc.*, 393 U.S. 453, 468 (1969) (noting that the protection of these provisions may "overlap" with that afforded by Section 14). Section 14(e), which is modeled on these provisions, is itself a broad antifraud provision that prohibits similar conduct but is expressly limited to tender offers.[9] *Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 10 (1985). In fact, it extends to *any* tender offer, whether involving registered securities or not. *See L.P. Acquisition Co. v. Tyson*, 772 F.2d 201, 208 (6th Cir. 1985) (citing, *inter alia*, *E.H.I. of Florida, Inc. v. Insurance Co. of N. America*, 652 F.2d 310, 315 (3d Cir. 1981), which held that the section "appl[ies] to any class of security"); *see also* S.E.C. Release No. 34-43069 (July 31, 2000) (noting that Section 14(e)

---

[9]    Section 14(e) provides: "It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. §78n(e). It is well established that Section 14(e) provides a private right of action. *See Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 32-33 (1977).

applies to "all tender offers . . . for any type of security," including "registered and unregistered securities").

An action for injunctive relief under Section 10(b) and Rule 10b-5 requires a plaintiff to allege that false and misleading statements will injure him in the absence of injunctive relief requiring their correction, but "does not have to show damages in connection with the purchase or sale of any security." *See Langner*, 913 F. Supp. at 270 (holding that "the plaintiff requesting injunctive relief must demonstrate that the continuation of past and present practices will in fact injure him." (citation and internal quotation marks omitted)). "The elements of an action for injunctive relief" pursuant to Section 14(e) are "essentially the same," but require a plaintiff to "establish that the [allegedly fraudulent statements and] omissions were material and that any of the stockholders who tendered their shares would probably not have tendered their shares if the alleged violations had not occurred." *Gulf*, 476 F.2d at 696 (citation and internal quotation marks omitted); *see also American Insured Mortg. Investors v. CRI, Inc.*, No. 90 Civ. 6630 (MBM), 1990 U.S. Dist. LEXIS 15787, at *18 (S.D.N.Y. Nov. 26, 1990) (holding that the "materiality standard does not require a showing that a Unitholder would change his decision concerning the Exchange Offer.").

In addition, as with an ordinary securities fraud claim, a plaintiff must allege with particularity facts that "give rise to a strong inference that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth," although great specificity is not required. *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (citation and internal quotation marks omitted). A plaintiff must also plead the circumstances surrounding the fraud, as well as the actionable statements, with particularity. *See Telenor E. Invest AS v. Altimo Holdings & Inv. Ltd.*, No. 07 Civ. 4829 (DC), 2008 U.S. Dist. LEXIS 23458, at *18 (S.D.N.Y. Mar. 25, 2008) (noting the requirements in a case involving Section 10(b) and 14(e) claims).

- 11 -

(1)    **The Complaint Particularizes the Statements and Omissions of Material Fact that Are Misleading**

The Complaint sets forth with particularity the materially misleading statements and omissions contained in the Memorandum. As detailed therein, the Memorandum represents the "net asset value" for each series of shares as of March 31, 2008, but misleadingly fails to provide investors with information sufficient to calculate the *present* net asset value. *See Langner*, 913 F. Supp. at 270 (holding that "misleading disclosures involving the valuation of assets implicate § 10(b)."); *see also American Insured*, 1990 U.S. Dist. LEXIS 15787, at *18-19 (noting, in connection with a Section 14(e) claim, that "a statement may violate the securities laws even though literally true if it is presented in a materially misleading manner."). The Memorandum also improperly omits information regarding the manner in which Defendants calculated the net asset value disclosed therein, as well as information concerning the value of the Company's assets and investments. *See American Insured*, 1990 U.S. Dist. LEXIS 15787, at *28 (holding, in the context of a contested tender offer, that "[e]ach side may advocate its own position as to the most appropriate valuation method *so long as it discloses fully the method used to make that valuation*." (emphasis added)). In fact, other than addressing the issue in vague generalities, the Memorandum does not even disclose what Falcon's assets and investments are.

This information is indisputably material to investors, who need to know both the current *and* potential value of their investments in order to determine whether: (a) to tender their shares in exchange for cash; (b) refrain from participating in the Tender Offer and hold their shares, with the hope that Citigroup's planned liquidation of the Company's assets will result in a larger return; or (c) in the case of an "accredited investor," elect to receive a "participation" share that will permit

such investor to continue to hold an interest in the Company after the Tender Offer closes.[10] *See Lynch v. Vickers Energy Corp.*, 383 A.2d 278, 281 (Del. 1977) (information relating to value of assets and stock was material in context of tender offer), *overruled in part on other grounds*, *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983); *see also American Insured*, 1990 U.S. Dist. LEXIS 15787, at *19 (observing that "nature of the decision the investor is being asked to make" must be evaluated in determining whether an issue is material).

Moreover, because the Company is not publicly-traded and need not comply with regulatory filing requirements, investors have no ability to independently obtain the omitted information or verify Defendants' representations regarding the value of the shares. *See Langner*, 913 F. Supp. at (holding that "misleading disclosures involving the valuation of assets implicate § 10(b)."). Under these circumstances, Defendants, who are in exclusive possession of this material information, are in an indispensable position to provide disclosure of the omitted information and their duty to do so is correspondingly greater than it would be in a contested tender offer. *See Broder*, 384 F. Supp. at 1319 (observing that "'[a]n issuer's duty can hardly be less than an outsider's in making a tender offer and should, if anything, be greater than an outsider's because of its complete access to internal information, its ease of communication with security holders, and their expected confidence in the issuer,'" quoting 1A. Bromberg, Securities Law: Fraud §6.4(4) at p.130 (1967)); *see also In re PHLCORP Sec. Tender Offer Litig.*, 700 F. Supp. 1265, 1272 (S.D.N.Y. 1988) ("In general, reliable information going to the financial condition of a company must be disclosed especially if the same material or equally valuable material is not otherwise available.").

---

[10]      The Memorandum likewise misleadingly describes the general market conditions that resulted in the fund's recent losses, in light of the fact that Defendants are alleged to have either changed their investment strategies or never to have followed them in the first place – either of which exposed the fund to the massive losses it recently sustained.

As noted above, the Memorandum also omits material information regarding the nature of the claims that investors must release in order to participate in the Tender Offer. In fact, other than revealing that the Release will extend to Defendants and numerous third parties and cover virtually any conceivable claim an investor has or could have, the Memorandum is silent on the nature of the claims, thereby misleadingly downplaying their significance. *See American Insured*, 1990 U.S. Dist. LEXIS 15787, at *32 (referencing a cash distribution in a footnote was materially misleading where it downplayed the significance to unitholders, because "treatment of the distribution [that way] may mislead investors into thinking that the dividend had no effect on shareholder wealth."). While this information is critically material to investors because they are being asked to give up potentially valuable rights in the Tender Offer, it takes on added significance because Defendants have disclosed the existence of a separate class action and a "U.S. regulatory inquiry" into Citigroup's funds. Moreover, Falcon heavily invested in several Citigroup funds (at one point, eleven of them), which raises the possibility that investors may have legal claims against each of those funds or Citigroup that they do not yet know about. Additional disclosure is necessary to apprise investors of the existence of any such claims. *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. 762-N, 2005 Del. Ch. LEXIS 133, at *20 (Del. Ch. Aug. 26, 2005) (holding that "alleged disclosure violations were potentially material because, had the plaintiffs known the truth, they could have asked for withdrawals, or brought suit before the value of the Funds plummeted.").

The absence of this information precludes investors from ascertaining the appropriate value of their shares or the Company's assets, because such value intrinsically incorporates the worth of any claims as well as the potential benefit of any present or future regulatory actions which may yield recoveries for the investors. *See American Insured*, 1990 U.S. Dist. LEXIS 15787, at *15 (holding that investors must be given sufficient information "to be reasonably aware of the

assumptions and possible limitations" of the merits of an exchange offer). On the same note, investors who continue to hold their shares or elect to receive newly-issued participation shares may unwittingly expose themselves to unanticipated liabilities or further losses as a result of Citigroup's conduct, which may result from additional civil or regulatory suits. *See Gulf*, 476 F.2d at 697 (holding that "'basic facts' bearing upon" an acquiring company's "possible liability for antitrust violations were of obvious concern" to shareholders of the target company "who retained part of their holdings."). In fact, investors may even be open to "liability" to Citigroup, which extended a $500 million credit facility to Falcon and other affiliated funds that is "senior to the claims of the investors," but Defendants have not provided enough information to investors to permit them to ascertain such risk.[11] *See* Mem. at p.2.

In addition, the Memorandum fails to disclose adequate detail regarding the nature, subject and scope of the "inquiry" or even the identity of the specific U.S. regulatory authority that has undertaken it, as well as Citigroup's "response." Indeed, although the Memorandum discloses that the inquiry involves an affiliated fund that was the subject of the other civil lawsuit,[12] it does not reveal whether Falcon itself is involved. Information regarding this or any other regulatory inquiry is clearly material, particularly where, as here, Defendants have reason to believe that additional regulatory scrutiny will occur. *See, e.g., RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 185 F.

---

[11]    Additionally, the Memorandum fails to explain the manner to which Citigroup's issuance of the credit facility may constitute a conflict of interest, making a passing mention of the facility in a summary of the Tender Offer but omitting a reference in a conflicts section. *See* Mem. at pp.2, 17.

[12]    A review of the docket in the other pending lawsuit reveals that it was voluntarily discontinued on May 12, 2008. Defendants must disclose additional information regarding this development notwithstanding the fact that it occurred after the commencement of the Tender Offer. *See Gulf*, 476 F.2d at 697 ("The fact that, at the time it announced its tender offer, an antitrust action had not been commenced against G&W, and that its liability was uncertain, does not excuse G&W's failure to disclose all these relevant circumstances so that A&P shareholders could weight them in reaching their decision whether or not to tender their shares.")

Supp. 2d 389, 401 (S.D.N.Y. 2002) (holding that the non-disclosure of an FTC investigation in the context of a tender offer constituted a material omission); *see also Sonesta*, 483 F.2d at 251 (holding that a "prospective event" or "contingency" may be material and require disclosure "even though the event may not occur," to permit an investor to decide "whether to assume the risk of its occurrence or non-occurrence in accepting or rejecting the tender offer.").

### (2)    The Complaint Sets Forth Why the Statements and Omissions Were Misleading When Made

The Complaint sufficiently alleges that the statements and omissions contained in the Memorandum were misleading when made, because Defendants were in possession of information that undermined those statements or that had to be disclosed in order to render their statements non-misleading.[13] *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 182 (S.D.N.Y. 2003) (statements that a company was "financially solid" were actionable where defendants did not have a reasonable basis for them); *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 140 (S.D.N.Y. 1999) (statements downplaying computer and internal control problems were actionable because they misled investors into believing that the problems were not as extensive or serious as they were); *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 675 (S.D.N.Y. 1990) (holding that "once corporate officers undertake to make statements, they are obligated to speak truthfully and to make such additional disclosures as are necessary to avoid rendering the statements made misleading."); *see also In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993) (holding that "[a] duty to disclose arises whenever secret information renders prior public statements materially misleading"), *cert. denied*, 511 U.S. 1017 (1994).

---

[13]    The alleged false and misleading statements and omissions are attributable to all Defendants under the group pleading doctrine. *See Waltree Ltd. v. ING Furman Selz LLC*, 97 F. Supp. 2d 464, 469 n.6 (S.D.N.Y. 2000).

- 16 -

For example, representations in the Memorandum regarding the value of the Company's shares and assets are misleading because Defendants did not disclose sufficient information to permit investors to ascertain the *current* value of the shares and assets – or even such value as of May 8, 2008, the date of the Memorandum – even though that information was within Defendants' possession when they made the representations.  Likewise, information regarding the regulatory inquiry and the other litigation is within Defendants' possession, yet they vaguely described the inquiry and failed to make additional disclosure regarding the discontinuation of the action, which they must have known about.  Moreover, Defendants are undoubtedly aware of the nature of the claims they seek to escape by inducing investors to agree to the wide-ranging Release in order to participate in the Tender Offer, yet they entirely failed to disclose any information regarding these claims.  Because of all this information is within Defendants' exclusive possession or control, investors cannot ameliorate the misleading nature of these statements and omissions through their own investigation.

### (3)    Defendants Knowingly or Recklessly Violated the Federal Securities Laws

Scienter is established by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or which show that defendants had motive and opportunity to commit fraud.  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001) (citing *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000)).  "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S. Ct. 2499, 2509 (2007) (emphasis in original).  The inference must merely be "*at least as likely* as any plausible opposing inference."  *Id.* at 2513 (emphasis in original).

Here, all of the facts, taken together, give rise to a strong inference that Defendants likely disseminated the misleading statements and omissions in the Memorandum with the fraudulent intent necessary to violate Section 14(e). As noted above, Defendants knowingly or recklessly disregarded that their statements were misleading when made, or that the disclosure of additional information was required to ameliorate any omissions or render their statements non-misleading. *See, e.g., Novak*, 216 F.3d at 30 (holding that the touchstone of recklessness is whether "defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation."); *In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613, 631 (S.D.N.Y. 2003) (holding that recklessness "represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."). The inference that Defendants intentionally or recklessly withheld or misrepresented information is at least as likely as any plausible opposing inference. *See RMED*, 185 F. Supp. 2d at 403 (holding that an insider who "had control over and intimate knowledge" of a company's business had sufficient motive and opportunity to commit securities fraud by concealing the existence of a regulatory investigation).

Moreover, the alleged facts, viewed holistically as *Tellabs* requires, raise a strong inference and likelihood that Defendants had the motive and opportunity to mislead investors, because convincing investors to tender their shares by withholding material inside information would permit Defendants to substantially takeover the Company while procuring the Release to preclude investors from pursuing any claims against them. *See RMED*, 185 F. Supp. 2d at 403 (finding recklessness where defendants had access to information regarding a regulatory investigation yet failed to make any disclosure of it). Eliminating investors would also permit Defendants to liquidate the Company

- 18 -

without the added expense of compensating investors should the sale of assets generate proceeds that exceed the Tender Offer consideration.

### b.    The Memorandum Violates Delaware Law

Under Delaware law, stakeholders have an unassailable right to full and accurate disclosure of all material facts prior to making a significant decision in connection with a corporate transaction. *See, e.g., Shell Petroleum, Inc. v. Smith*, 606 A.2d 112, 114 (Del. 1992); *Stroud v. Grace*, 606 A.2d 75, 85 (Del. 1992); *accord Bakerman v. Sidney Frank Importing Co.*, No. 1844-N, 2006 Del. Ch. LEXIS 180, at *49 (Del. Ch. Oct. 10, 2006) (holding that the manager of a limited liability company has a fiduciary duty to its members "to disclose all material facts bearing on the decision at issue," and citing *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 137 (Del. 1997), which concerned disclosure to corporate shareholders).

The requirement of "complete candor" is particularly acute where corporate insiders are concerned. *See Lynch*, 383 A.2d at 281 ("The objective, of course, is to prevent insiders from using special knowledge which they may have to their own advantage and to the detriment of the stockholders.") As such, corporate "management has a heavy burden to insure that disclosure is complete and non-misleading, especially with respect to shareholders whose interests may differ from their own." *Blanchette v. Providence & Worcester Co.*, 428 F. Supp. 347, 354 (D. Del. 1977); *see also Arnold v. Society for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (holding "directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action.").

Moreover, once a company makes a disclosure, it must do so candidly and truthfully. *Freedman v. Restaurant Assocs. Indus., Inc.*, No. 9212, 1990 Del. Ch. LEXIS 142, at *15 (Del. Ch. Sept. 21, 1990) (holding, in the context of a proxy solicitation, that "where management chooses to disclose its motives or the purposes of a transaction, it has an obligation to disclose those purposes

honestly and candidly"). Thus, "[w]hen a document ventures into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts." *In re Pure Resources, Inc. S'Holders Litig*, 808 A.2d 421, 448 (Del. Ch. 2002); *see also Arnold*, 650 A.2d at 1280 (holding that "once defendants traveled down the road of partial disclosure of the history leading up to the Merger and used the vague language described, they had an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events").

As discussed above, the Memorandum contains several significant factual omissions and misstatements that render disclosure regarding the Tender Offer likely inadequate. Under Delaware law, these disclosure deficiencies constitute a breach of fiduciary duty to the investors, who are in a fiduciary relationship with Defendants because of the nature of the management responsibilities that Defendants have and the degree of control they exercise over the Company and/or the Tender Offer. *See In re Primedia Inc., Derivative Litig.*, 910 A.2d 248, 257 (Del. Ch. 2006) (observing that "'a stockholder stands as a fiduciary if it exercises control over the business and affairs of the corporation,'" quoting *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113-1114 (Del. 1994)); *see also In re Primedia*, 910 A.2d at 257 (allegations of day-to-day management were unnecessary because "[a]llegations of control over the particular transaction at issue [we]re enough."). Moreover, in the unlikely event that any of the Defendants do not occupy a fiduciary relationship with the investors, they presumably participated in the drafting and dissemination of the Memorandum and thus aided and abetted the breaches of fiduciary duty. *See Gatz v. Ponsoldt*, 925 A.2d 1265, 1276 (Del. 2007) (noting that aiding and abetting liability requires knowing participation in a breach, citing *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001)).

**D.   Plaintiff Has Raised Sufficiently Serious Questions Going to the Merits and Can Show that the Hardships are Balanced Against It**

As shown above, Plaintiff has established irreparable injury and a likelihood of success under both federal and Delaware law. Nevertheless, in the event that the Court disagrees, Plaintiff has raised sufficiently serious questions going to the merits of the claims and can demonstrate that the hardships are decidedly balanced against it. *See Wenner*, 2005 U.S. Dist. LEXIS 1925, at *14 (granting injunctive relief under this prong). This standard imposes a "somewhat lesser burden" than showing a likelihood of success. *Broder*, 384 F. Supp. at 1317.

**1.   Plaintiff Has Raised Serious Questions Going to the Merits**

To raise serious questions going to the merits of a claim, a movant must merely raise issues that are sufficiently significant "to make them a fair ground for litigation and thus for more deliberate investigation." *Gulf*, 476 F.2d at 692-693 (citations and emphasis omitted); *see also Broder*, 384 F. Supp. at 1317 (noting that the allegations need only be "'of sufficient substance to warrant an examination of the other requirements necessary to the grant of preliminary injunctive relief,'" quoting *Gulf*, 476 F.2d at 693). In considering whether this element is met, a determination of the merits of the claim is inappropriate. *See Broder*, 384 F. Supp. at 1317.

Here, the Memorandum contains several troubling misrepresentations and omissions that must be corrected before investors can make an informed decision regarding the Tender Offer. Moreover, the alleged violations of the federal securities laws and Delaware law raise sufficiently significant issues to warrant further consideration. These violations take on added urgency here because Falcon is a company whose securities are not registered, it is not subject to ordinary regulatory filing requirements, and investors are necessarily forced to exclusively rely upon Defendants to make disclosure of all material facts regarding the Tender Offer.

## 2.    The Hardships Are Balanced Against Plaintiff

There is no question that the hardships are balanced against Plaintiff here. Without full and adequate disclosure, Plaintiff and the other investors must make a grossly uninformed decision about whether to tender their shares. In addition, the importance of additional disclosure – and hence injunctive relief – is heightened further here because, in order to tender their shares, investors must release any potential claims they may have. Injunctive relief will ensure that investors have all material information relevant to the Tender Offer prior to deciding whether to tender their shares, which satisfies the purpose of the Williams Act and the aim of Delaware law. *See, e.g.*, *Sonesta*, 483 F.2d at 250 (holding that "a preliminary injunction will normally afford prompt relief against a violation of § 14(e)" of the Williams Act); *Broder*, 384 F. Supp. at 1323 (holding that injunctive relief "will serve the purposes of the Williams Act" by ensuring that "shareholders are adequately apprised of all material facts necessary to permit them to make an informed judgment as to the advisability of tendering their shares."); *accord ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1262-1263 (Del. Ch. 2003) (holding that "'[i]t is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected,'" quoting *In re Staples, Inc. S'Holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001)).

Moreover, this case involves an issue that has been the subject of serious public interest, in light of the current market environment: an alleged scheme perpetrated by certain members of the financial services industry to induce investors to invest in funds that are incompatible with their investment goals, strategies or risk tolerances. In fact, Defendants have disclosed the existence of a regulatory inquiry concerning Citigroup and its funds has been made, further evidencing the public – and governmental – interest in these issues. As the Second Circuit has instructed, "doubts as to whether an injunction sought is necessary to safeguard the public interest – when the public interest involved is as clear, pervasive and vital as the record here demonstrates – should be resolved in favor

- 22 -

of granting the injunction." *Gulf*, 476 F.2d at 699 (emphasizing the importance of private actions to enforce the federal securities laws); *see also American Insured*, 1990 U.S. Dist. LEXIS 15787, at *17 (quoting same).

In contrast, any required postponement of the Tender Offer to require additional disclosure would minimally delay the transaction for only so long as would be necessary for the finite group of investors at issue to digest the newly disclosed information. The injunction would not be indefinite, and the Tender Offer could still take place. As such, injunctive relief "does not even sacrifice the legitimate desires of [investors] to accept the offer," because after the requested relief is granted, "the offer may then be renewed." *Federated*, 1999 U.S. Dist. LEXIS 16996, at *29. Moreover, under the express terms of the Memorandum, Defendants, in their sole discretion, may extend or amend the Tender Offer, thereby undercutting any argument that an injunction here would unduly burden them. *See* Mem. at p.19. Consequently, Defendants would not suffer any hardship from the entry of injunctive relief but would instead receive an invaluable benefit from it, because the required disclosure would ensure that the Tender Offer complies with federal and Delaware law. *See Gulf*, 476 F.2d at 698 (observing that there is "no inherent right to proceed with an unlawful tender; a requirement of lawfulness is included by implication in every tender offer.").

In any event, any delay attendant with an injunction is a consequence of Defendants' own failure to make sufficient disclosure in the first place, because the information that Plaintiff seeks was within their possession when they issued the Memorandum. As one court held in an analogous situation, where the defendants had complained that they would be prejudiced by a temporary restraining order postponing a stockholder vote pending the issuance of additional disclosures:

> *[I]n considering the balance of equities between plaintiffs and defendants, it is relevant to note that any wounds to defendants are entirely self-inflicted* . . . [T]he information disclosed by defendants on February 12, 2007, was not new or unavailable at the time of the original proxy statement. If Caremark believed that a

mere seventeen-day delay in the merger vote would, as defendants now suggest, materially affect Caremark's ability to operate and negotiate contracts, then these disclosures should have been made with greater haste.

*La. Mun. Police Employees Ret. Sys. v. Crawford*, Civil Action No. 2635-N, 2007 Del. Ch. LEXIS 28, at *5 (Del. Ch. Feb. 13, 2007) (emphasis added). The same would be true here with respect to the requested injunctive relief.

### E.    A Bond Is Not Necessary Under the Circumstances

As noted above, enjoining the Tender Offer until Defendants make adequate disclosure will merely postpone its expiration, but will not preclude its procession after such disclosure is effectuated, causing no monetary damage to them. Because Defendants cannot demonstrate that preserving the status quo will cause them cognizable economic harm, the Court is well within its discretion to dispense with the requirement of posting of a bond. *See Doctor's Assocs. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997), *cert. denied*, 522 U.S. 948 (1997) (no bond was required in absence of harm); *accord Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964) (same); *see also Broder*, 384 F. Supp. at 1324 (enjoining tender offer under Section 14(e) without any apparent bond requirement).

### F.    Limited Expedited Discovery is Required to Provide the Court With a Complete Record on Plaintiff's Injunction Motion

Limited discovery on an expedited basis is required here. Courts commonly permit expedited discovery to enable a movant to develop a complete record in anticipation of an application for injunctive relief or where exigent circumstances require it. *See, e.g., Stern v. Cosby*, 246 F.R.D. 453, 458 (S.D.N.Y. 2007) (granting expedited deposition permitted to ascertain whether defendant tampered with witnesses); *Standard Investment Chartered, Inc. v. NASD, Inc.*, No. 07 Civ. 2014 (SWK), 2007 U.S. Dist. LEXIS 27342, at *16 (S.D.N.Y. Apr. 11, 2007) (granting expedited discovery in anticipation of motion to enjoin transaction on basis of misleading disclosure); *OMG*

- 24 -

*Fidelity, Inc. v. Sirius Tech., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006) (granting discovery in advance of anticipated motion). In fact, courts ordinarily exercise their discretion to grant expedited proceedings in actions challenging corporate transactions. *See, e.g., Standard Investment*, 2007 U.S. Dist. LEXIS 27342, at *3 (corporate consolidation); *Ortsman v. Green,* No. 2670-N, 2007 Del. Ch. LEXIS 29, at *6 (Del. Ch. Feb. 28, 2007) (merger).

In this Circuit, courts have largely applied two standards to determine whether expedited discovery is warranted: a four-part test that requires a preliminary injunction-like showing; or a more flexible standard of "good cause." *See Stern*, 246 F.R.D. at 457; *KeyBank, Nat'l Ass'n v. Quality Payroll Sys., Inc.*, No. CV 06-3013 (JS) (AKT), 2006 U.S. Dist. LEXIS 42078, at *9-10 (S.D.N.Y. June 22, 2006). Under the first standard, a movant must demonstrate the following elements:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Stern*, 246 F.R.D. at 457 (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)). Some courts have criticized this test precisely because it resembles the injunction standard that frequently succeeds it. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-327 (S.D.N.Y. 2005) (concluding that the standard "makes little sense," and citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623-24 (N.D. Ill. 2000)). As a result, courts have signaled a shift away from this standard in favor of the second, more flexible test which requires a showing that good cause exists because the discovery sought is reasonable under the circumstances. *See Stern*, 246 F.R.D. at 457; *Standard Investment*, 2007 U.S. Dist. LEXIS 27342 at *16.

Here, Plaintiff can establish an entitlement to expedited discovery under either standard. Under the more rigorous standard, Plaintiff, as shown herein, has demonstrated irreparable injury

and a probability of success on the merits. Plaintiff can also establish a nexus between the requested discovery and the irreparable harm, because the discovery that Plaintiff seeks is target to address and ameliorate the disclosure deficiencies contained in the Memorandum. Moreover, because Plaintiff seeks limited discovery that is well-tailored to its claims, consisting of two-pages of refined requests[14] and a maximum of three depositions, the harm that would result from a denial of discovery here far exceeds the minimal inconvenience that Defendants would experience if discovery were granted. In the same respect, Plaintiff has established good cause for the requested discovery because it is reasonable under the circumstances. While Plaintiff has identified material omissions in the Memorandum that warrant the entry of injunctive relief requiring supplemental and/or corrective disclosures, the missing information is exclusively within Defendants' possession and thus must be uncovered before the Court can order them to disclose it to Plaintiff and the other investors.

---

[14]     A copy of Plaintiff's Request for the Production of Documents is annexed as Exhibit D.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests this Court to grant its motion for expedited discovery and a preliminary injunction enjoining the Tender Offer until such time as Defendants make the supplemental and/or corrective disclosures requested, as reflected in the Proposed Order submitted herewith as Exhibit A.

DATED: May 21, 2008                    COUGHLIN STOIA GELLER
                                         RUDMAN & ROBBINS LLP
                                       SAMUEL H. RUDMAN
                                       ROBERT M. ROTHMAN
                                       JOSEPH RUSSELLO


                                       _____
                                           SAMUEL H. RUDMAN

                                       58 South Service Road, Suite 200
                                       Melville, NY 11747
                                       Telephone: 631/367-7100
                                       631/367-1173 (fax)

                                       COUGHLIN STOIA GELLER
                                         RUDMAN & ROBBINS LLP
                                       DARREN J. ROBBINS
                                       DAVID C. WALTON
                                       DAVID T. WISSBROECKER
                                       655 West Broadway, Suite 1900
                                       San Diego, CA 92101-3301
                                       Telephone: 619/231-1058
                                       619/231-7423 (fax)

                                       Attorneys for Plaintiff

- 27 -