UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FERGUSON FAMILY TRUST, On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FALCON STRATEGIES TWO LLC, AMACAR GP, INC., CITIGROUP ALTERNATIVE INVESTMENTS LLC, CITIGROUP, INC. and REAZ ISLAM, <br><br> Defendants. | Civil Action No. 08 CIV 4723 |

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S APPLICATION
FOR EXPEDITED DISCOVERY AND A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................ 1

Statement of Facts ............................................................................. 3

A.   The Company ............................................................................. 3

B.   The 2007 – 2008 Credit Crisis and Its Impact on Falcon.................. 6

C.   The Tender Offer......................................................................... 7

D.   Alleged Misrepresentations and Omissions in the Exchange OM ...... 8

   1.   Current NAV ........................................................................ 8

   2.   Method of calculating NAV .................................................... 8

   3.   Information about individual Company assets........................... 9

   4.   Released claims.................................................................... 9

   5.   Reasons for the Company's losses ........................................ 10

   6.   Purpose of the tender offer .................................................. 10

Argument........................................................................................ 10

I.   PLAINTIFF HAS NOT ESTABLISHED ANY OF THE PREREQUISITES
     FOR A PRELIMINARY INJUNCTION ............................................. 10

   A.   Plaintiff Has Not Demonstrated Irreparable Harm ...................... 11

   B.   Plaintiff Cannot Show Likelihood of Success on the Merits or a
        Substantial Legal Question .................................................... 14

      1.   The Complaint Does Not Allege Any Misstatements or Omissions
           Actionable Under §§ 10(b) or 14(e)..................................... 14

      2.   The Complaint Fails To Allege Any Misstatements by Reaz Islam......... 17

      3.   The Complaint Does Not Allege Facts Giving Rise To A
           Strong Inference Of Scienter.............................................. 17

4.    Plaintiff Has Not Stated A Claim for Breach of Fiduciary Duty or Aiding and Abetting Breach of Fiduciary Duty Under Delaware Law .... 19

C.    The Balance of the Hardships Tips Against an Injunction ................................... 22

II.    THE PSLRA STAY OF DISCOVERY SHOULD NOT BE LIFTED ............................ 22

## TABLE OF AUTHORITIES

**Page**

CASES

*Am. Insured Mortgage Investors* v. *CRI, Inc.*,
No. 90 Civ. 6630(MBM), 1990 WL 192561 (S.D.N.Y. Nov. 26, 1990) ............................... 14

*Broder* v. *Dane*,
384 F. Supp. 1312 (S.D.N.Y. 1974) ................................................................. 16

*Consol. Gold Fields PLC* v. *Minorco, S.A.*,
871 F.2d 252 (2d Cir. 1989) ........................................................................ 13

*Consol. Gold Fields PLC* v. *Anglo Am. Corp. of S. Afr. Ltd.*,
713 F. Supp. 1457 (S.D.N.Y. 1989) .............................................................. 17

*Cottle* v. *Carr*,
1988 WL 10415 (Del. Ch. Feb. 9, 1988) ....................................................... 12

*First Eagle Sogen Funds, Inc.* v. *Bank for Int'l Settlements*,
No. 01 Civ. 0087(RO), 2001 WL 66321 (S.D.N.Y. Jan. 26, 2001) ...................... 22

*Forest City Daly Hous. Inc.* v. *Town of Hempstead*,
175 F.3d 144 (2d Cir. 1999) ........................................................................ 11

*Ganino* v. *Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000) ........................................................................ 14

*Global Intellicom, Inc.* v. *Thomson Kernighan & Co.*,
No. 99 Civ. 342(DLC), 1999 WL 223158 (S.D.N.Y. Apr. 16, 1999) ................... 24

*Gold Fields Ltd.* v. *Harmony Gold Mining Co. Ltd.*,
No. 04 Civ. 8767(RMB), 2004 WL 2710030 (S.D.N.Y. Nov. 23, 2004) ........ 11, 13

*Goplen* v. *51job, Inc.*,
453 F. Supp. 2d 759 (S.D.N.Y. 2006) ........................................................... 18

*Gradient OC Master, Ltd.* v. *NBC Universal, Inc.*,
930 A.2d 104 (Del. Ch. 2007) ..................................................................... 12

*Hanson Trust PLC* v. *SCM Corp.*,
774 F.2d 47 (2d Cir. 1985) .......................................................................... 11

*Iavarone* v. *Raymond Keyes Assocs.*,
733 F. Supp. 727 (S.D.N.Y. 1990) ..................................................... 11, 12, 13

*In re Carnegie Int'l Corp. Sec. Litig.,*
  107 F. Supp. 2d 676 (D. Md. 2000) ............................................................ 23

*In re JDS Uniphase Corp. Sec. Litig.,*
  238 F. Supp. 2d 1127 (N.D. Cal. 2002) ...................................................... 23

*In re Marriott Hotel Props. II Ltd. P'ship Unitholders Litig.,*
  No. Civ. A. 14961, 2000 WL 128875 (Del. Ch. Jan. 24, 2000)................... 21, 22

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
  536 F. Supp. 2d 313 (S.D.N.Y. 2007)........................................................ 15

*In re MONY Group, Inc. S'holder Litig.,*
  853 A.2d 661 (Del. Ch. 2004)..................................................................... 20

*In re Motel 6 Sec. Litig.,*
  161 F. Supp. 2d 227 (S.D.N.Y. 2001)........................................................ 17

*In re PHLCORP Sec. Tender Offer Litig.,*
  700 F. Supp. 1265 (S.D.N.Y. 1998)........................................................... 16

*In re Pure Res., Inc. S'holders Litig.,*
  808 A.2d 421 (Del. Ch. 2002)..................................................................... 13

*In re Refco, Inc. Sec. Litig.,*
  No. 05 Civ. 8626(GEL), 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006) ........ 23

*In re Siliconix Inc. S'holders Litig.,*
  No. Civ. A. 18700, 2001 WL 716787 (Del. Ch. June 19, 2001).................. 12, 20

*In re Smith Barney Transfer Agent Litig.,*
  No. 05 Civ. 7583(WHP), 2006 WL 1738078 (S.D.N.Y. June 26, 2006) .... 25

*In re Take-Two Interactive Sec. Litig.,*
  No. 06 Civ. 803(SWK), 2008 WL 1757823 (S.D.N.Y. 2008)..................... 19

*In re Time Warner Inc. Sec. Litig.,*
  9 F.3d 259 (2d Cir. 1993)........................................................................... 15

*In re Trump S'holder Litig.,*
  No. 96 Civ.7820 (DAB)(HBP), 1997 WL 442135 (S.D.N.Y. Aug. 5, 1997)...... 23

*In re WorldCom, Inc. Sec. Litig.,*
  234 F. Supp. 2d 301 (S.D.N.Y. 2002)........................................................ 24

*John Labatt Ltd. v. Onex Corp.,*
  890 F. Supp. 235 (S.D.N.Y. 1995).............................................................. 22

*Lichtenberg* v. *Besicorp Group Inc.*,
    43 F. Supp. 2d 376 (S.D.N.Y. 1999) ................................................................. 13

*Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*,
    437 F.3d 588 (7th Cir. 2006) ........................................................................ 17

*Medical Imaging Centers of Am., Inc.* v. *Lichtenstein*,
    917 F. Supp. 717 (S.D. Cal. 1996) .............................................................. 24

*MONY Group, Inc.* v. *Highfields Capital Mgmt., L.P.I*,
    368 F.3d 138 (2d Cir. 2004) ........................................................................ 11

*Olesh* v. *Dreyfus Corp.*,
    No. 94 Civ. 2909(CPS), 1994 WL 780189 (E.D.N.Y. Aug. 5, 1994) ............... 22

*Phillips* v. *Instiuform of North America, Inc.*,
    Civ. A. No. 9173, 1987 WL 16285 (Del. Ch. Aug. 27, 1987) ........................ 13

*Podany* v. *Robertson Stephens, Inc.*,
    318 F. Supp. 2d 146 (S.D.N.Y. 2004) ........................................................... 19

*Ranger Oil Ltd.* v. *Petrobank Energy and Res. Ltd.*,
    No. 00 Civ. 3139(SHS), 2000 WL 33115906 (S.D.N.Y. May 23, 2000) ....... 11, 12

*Rombach* v. *Chang*,
    355 F.3d 164 (2d Cir. 2004) ........................................................................ 14

*Rondeau* v. *Mosinee Paper Corp.*,
    422 U.S. 49 (1975) ....................................................................................... 11

*San Leandro Emergency Med. Group Profit Sharing Plan* v. *Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) .......................................................................... 18

*Schmidt* v. *Enertec Corp.*,
    598 F. Supp. 1528 (S.D.N.Y. 1984) ..................................................... 12, 13, 22

*SEC* v. *Kushner*,
    417 F. Supp. 2d 326 (S.D.N.Y. 2006) ........................................................... 17

*SG Cowen Sec. Corp.* v. *U.S. Dist. Court for Northern Dist. of Cal.*,
    189 F.3d 909 (9th Cir. 1999) ..................................................................... 23

*Sheppard* v. *TCW/DW Term Trust 2000*,
    938 F. Supp. 171 (S.D.N.Y. 1996) ................................................................ 19

*Skeen* v. *Jo-Ann Stores, Inc.*,
    750 A.2d 1170 (Del. 2000) ..................................................................... 19, 20

*Skydell* v. *Ares-Serono S.A.*,
    892 F. Supp. 498 (S.D.N.Y. 1995) ................................................................ 14

*Sonesta Int'l Hotels Corp.* v. *Wellington Assocs.*,
    483 F.2d 247 (2d Cir. 1973) ...................................................................... 13

*Southland Sec. Corp.* v. *INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir.2004) ...................................................................... 17

*Stepak* v. *Scharffenberger*,
    No. Civ. 6530, 1985 WL 11579 (Del. Ch. Aug. 9, 1985) ...................................... 21

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) ............................................................................ 18

*Tom Doherty Assocs.* v. *Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir. 1995) ......................................................................... 11

*Vacold LLC* v. *Cerami*,
    No. 00 Civ. 4024(AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) ........................ 23

*Warner Commc'ns, Inc.* v. *Chris-Craft Indus., Inc.*,
    Civ. No. 10817, 1989 WL 85085 (Del. Ch. July 21, 1989) .................................... 12

*Weiss* v. *Samsonite Corp.*,
    741 A.2d 366 (Del. Ch. 1999) ............................................................... 20, 21

*Winer Family Trust* v. *Queen*,
    503 F.3d 319 (3d Cir. 2007) ...................................................................... 17

*Wright* v. *Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ...................................................................... 17

## STATUTES

15 U.S.C. § 77d(2) ................................................................................... 4

15 U.S.C. § 78u-4 ................................................................................... 3

15 U.S.C. § 78u-4(b)(1) ........................................................................... 14

15 U.S.C. § 78u-4(b)(2) ............................................................................. 1

15 U.S.C. § 78u-4(b)(3)(B) .................................................................... 23, 25

15 U.S.C. § 80a-2(51) ............................................................................... 4

**OTHER AUTHORITIES**

17 C.F.R. § 230.501 ................................................................................ 4

17 C.F.R. § 240.106-5 .......................................................................... 14

Fed. R. Civ. P. 9(b) .............................................................................. 18

## **Preliminary Statement**

Defendant Falcon Strategies Two LLC ("Falcon" or "the Company") is an investment fund that was available only to wealthy, sophisticated investors. The cover page of its Offering Memorandum stated that it was a "highly speculative investment," and the risk disclosures in that document warned investors of the risk of "possible loss of the entire amount invested."[1] Unfortunately, Falcon lost a large part of its value in the recent collapse of the credit markets, and is no longer making distributions to or permitting redemptions by investors, pending liquidation of its assets. Shares valued at $1 at the fund's launch now have a net asset value ("NAV") of 19 to 21 cents.

By this motion, plaintiff seeks to enjoin a wholly voluntary tender offer whereby participating investors may, if they choose, receive an immediate cash payment for each of their Falcon shares representing more than double their NAV. The tender offer provides investors with two options: (1) Investors that accept the tender offer will receive an immediate cash payment of 45 cents per share, together with newly issued "participating shares" for accredited investors entitling them to a substantial portion of any future upside when the assets are liquidated. In return, they are required to release claims against Falcon and others in connection with their investment. (2) Investors that choose not to accept the tender offer will retain their current investments and the full upside (or downside) as Falcon's assets are liquidated, together with any claims they may have, and forego the immediate liquidity.

Plaintiff's motion to preliminarily enjoin the tender offer should be denied for the following reasons:

---

[1]     *See* Falcon Strategies Two LLC Offering Memorandum ["Falcon OM,"], cover page; a copy of the OM is submitted as Exhibit A to the Affidavit of James O'Brien ("O'Brien Aff."). A copy of the 2005 Supplement to the Falcon OM is attached as Exhibit B to the O'Brien Aff.

*First*, allowing the tender offer to proceed will cause no irreparable injury. No matter how many investors accept the tender offer, those that choose not to tender will be in exactly the same position as they would have been if there were no tender offer. They will hold the same Falcon shares, with the same economic value and the same legal rights, as they hold today. Moreover, whether or not any particular investor tenders its shares, any damages would be readily calculable, based on the difference between the 45 cents per share being offered and the value ultimately realized when the Company is liquidated.

Nor will the tender offer affect Falcon's ability to respond to an award of damages in the unlikely event plaintiff can establish its claims. As plaintiff acknowledges, Citigroup Inc. ("Citigroup") is funding the tender offer—every dollar the Company pays out in the tender offer will be matched by a dollar paid in by Citigroup.

*Second*, plaintiff's motion should be denied because plaintiff cannot demonstrate a likelihood of success on the merits, or even a substantial legal question..

Plaintiff does not allege facts showing that affirmative statements in the tender offer materials are false or misleading. Rather, its allegations are a wish list of additional pieces of information it believes would be useful for investors to know. While plaintiff attempts to transmute the antifraud provisions of the federal securities laws into minimum disclosure requirements, the relevant statutory sections do not impose such requirements. Providing less information than plaintiff would like is not fraud. In any event, most of plaintiff's wish list consists of information that has already been provided or information that is not knowable at this time. (*See* pp. 14-17 below.)

Plaintiff cannot establish a likelihood of success on the merits for the additional reasons that (1) the conclusory allegations in the Complaint do not give rise to a strong inference

2

of scienter; and (2) there is nothing coercive about the tender offer, because it imposes no penalty on investors that elect not to participate and instead merely gives investors an option to obtain immediate liquidity that would not otherwise be available. (*See* pp. 18-22, below.)

Finally, plaintiff is not entitled to any discovery, much less expedited discovery. Under the PSLRA,[2] discovery is not permitted until the Complaint survives a motion to dismiss, unless the party seeking discovery establishes either a need to preserve evidence or undue prejudice. The Complaint has not survived such a motion (and is unlikely to), and plaintiff does not even purport to show either a need to preserve evidence or undue prejudice. Rather, plaintiff is seeking to use discovery to obtain the very disclosures that are the remedy it ultimately seeks. Courts have consistently rejected efforts by plaintiffs to end-run the PSLRA discovery stay by filing motions for preliminary injunctions.

## Statement of Facts

### A.    The Company

Falcon is a Delaware limited liability company that was formed to invest in fixed income markets for the benefit of sophisticated, high net worth investors. (Falcon OM, cover page.) In 2004 and 2005, the Company issued unregistered shares (in several series) at $1 per share[3] to a limited number of purchasers, who were required to be both "accredited investors" and "qualified purchasers" under the federal securities laws. (*Id.*)[4] The minimum investment

---

[2]    Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4 *et seq.*

[3]    Shares were issued at $1 per share at the initial issuance and thereafter at the then-current NAV.

[4]    "Accredited investors" and "qualified purchasers" must meet stringent minimum net worth or income requirements to qualify for that status. *See* 17 C.F.R. § 230.501 *et seq.* (defining "accredited investor"); 15 U.S.C. § 80a-2(51) (defining "qualified purchaser"). Falcon's shares were permitted to be sold without registration under Section 4(2) of the Securities Act of 1933, 15 U.S.C. § 77d(2).

was $500,000.  (O'Brien Aff., Ex. C [Falcon Strategies Subscription Agreement ("Subscription Agreement")] at 1.)

Contrary to plaintiff's allegation that the Company was sold as a "conservative investment" (Compl. ¶ 10), the Falcon OM emphatically and repeatedly warned investors that an investment in the Company was "highly speculative" and entailed significant risks.  It cautioned:

> *An investment in Shares is a highly speculative investment that involves significant risks due to, among other things, the Portfolios' investment strategies and polices, the nature of the Portfolios' investments, the lack of a public market for Shares, and the restrictions on redemptions.*

(Falcon OM (bold and italics in original), cover page; *see also id.* at 5, 13, 18.)  The Falcon OM described the risks of the investment—including "**possible loss of the entire amount invested**" (*id.* at 18; emphasis in original)—in an exceptionally detailed "Risk Factors" section (*id.* at 18-30) and elsewhere.  Every investor in the Company was required as a condition of investing to certify, among other things, that it had "received, read carefully, and underst[ood]" the Falcon OM, and plaintiff so certified.  (Subscription Agreement at 4-5.)

The Falcon OM likewise belies plaintiff's allegations that it was unaware of the nature of the Company's investment strategies.  Plaintiff alleges that, "unbeknownst to investors," the Company's investment approach was

> highly leveraged on the condition of the credit markets and liquidity in the bond markets.  In this regard, Falcon's investments were more akin to derivatives.  In fact, Falcon employed municipal bond arbitrage, carried commercial debt obligations and held asset-backed mortgage instruments that were intrinsically tied to the condition of the credit and bond markets.  Moreover, Falcon heavily invested in funds under the Citigroup umbrella that employed these investment strategies.

(Compl. ¶ 12, *see also* ¶¶ 24, 32-33; Pl. Mem. at 1, 3.)

In fact, *every one* of these elements of the investment strategy—municipal bond arbitrage and mortgage-backed securities, leverage, derivatives, and investment in Citigroup-affiliated funds—was prominently disclosed in the Falcon OM. The Falcon OM explained to investors that the Company's initial investment strategies were "mortgage-backed strategies," "municipal arbitrage," bank loan and debt securities, and preferred securities. (Falcon OM at 8, 11-12.) It disclosed that as part of its strategy "[a] Fund may use derivative instruments," and described in detail the nature and risks of such derivatives. (*Id.* at 23-24; *see also id.* at 10.) It made clear that some of these strategies "will from time to time require the use of substantial leverage," thereby "magnif[ying] the degree of risk." (*Id.* at 27; *see also id.* at 2, 10, 11, 12.) And it explained that the Company intended to implement its investment strategies by investing in investment funds affiliated with Citigroup. (*Id.* at 9) ("**It is expected that the Investment Manager will select affiliated Advisors unless, with respect to a particular Strategy, the Investment Manager believes that there is a non-affiliated Advisor in a position to more successfully execute such Strategy**.") (emphasis in original).

Investors received further information about the Company's investments, asset values, and returns in regular monthly statements, and in quarterly and annual reports. (O'Brien Aff. ¶¶ 7-8.) For example, one of the first quarterly reports that plaintiff received showed that 27% of Falcon was invested in municipal arbitrage strategies and approximately 30% in mortgage-backed assets through two different strategies, and stated that "the Fund's capital was leveraged approximately 4-5 times, on average across all strategies." (*Id.* Ex. E [June 30, 2005 quarterly investor Report].) Monthly statements sent to investors showed the most recent NAV of the investor's shares. In light of the complexity of valuing many of the instruments held by the Company, valuations for each month-end were provided late in the following month—thus,

for example, the NAV as of January 31 would be provided on or about February 28. (O'Brien Aff. ¶¶ 10-11.) Additional information about the Company's assets and returns was set forth in audited financial statements provided to investors each year. (*Id.* ¶ 12.)

**B.**     <u>**The 2007 – 2008 Credit Crisis and Its Impact on Falcon**</u>

   In mid-to-late 2007, the global credit markets began to experience unprecedented volatility. (O'Brien Aff., Ex. G (Greg Ip, *J.P. Morgan Buys Bear in Fire Sale, As Fed Widens Credit to Avoid Crisis*, WALL ST. J., Mar. 17, 2008) (noting effects of "the unprecedented scale of the storm now sweeping through the markets and the economy.")) As the Complaint acknowledges, these market conditions severely impacted the Company's cash position and the net asset value of its shares. (Compl. ¶ 12; O'Brien Aff. ¶¶ 16-17 and Ex. H [Tender and Exchange Offer Memorandum ("Exchange OM")] at 2.) For plaintiff's series, for example, NAV declined from 62.95 cents per share at December 31, 2007 to 19.2 cents per share at March 31, 2008; the NAV of other shares ranges from 19 to 21 cents. (O'Brien Aff. ¶ 17.)

   Falcon took a variety of steps to address these problems. On February 20, 2008, Falcon, together with certain affiliated funds, entered into an approximately $500 million credit facility with an affiliate of CAI in order to meet margin calls and prevent a forced sale of the funds' assets at fire-sale prices. (Exchange OM at 2; Compl. ¶ 13.) On March 20, 2008, in a further effort to preserve the Company's liquidity, the Investment Manager suspended redemptions from the funds and semi-annual income distributions. (O'Brien Aff. ¶ 19; Exchange OM at 2.) Additionally, the Investment Manager formally commenced and continued to liquidate certain of the Company's assets. (O'Brien Aff. ¶ 19.) The Investment Manager has told investors that it does not believe the Company can be revived or that it will be able to allow redemptions prior to liquidation. (*Id.*)

C.    **The Tender Offer**

On May 8, 2008, the Company announced the tender offer. That offer gives investors two choices: (1) they can receive 45 cents in cash per share and a "Participation Share" that will entitle them to 75 percent of the liquidation value of the portfolio above 45 cents per share, if any, minus the cost of capital, in exchange for tendering their shares and releasing legal claims against the Company, CAI, and others relating to their investment;[5] or (2) they can retain their illiquid investment, share fully in any gain or loss realized through the liquidation of the portfolio, and retain all legal rights including the right to sue. To fund the exchange, Citigroup and its affiliates will purchase for 45 cents per share a number of shares equal to the number tendered by investors. (O'Brien Aff. ¶ 21; Exchange OM, cover page, pp. 11-12.) Investors may elect to participate at any time until the expiration of the tender offer on June 30, 2008, and are free to revoke a tender previously given until that date. (Exchange OM, pp 11-12.)

Though plaintiff asserts otherwise (*e.g.*, Compl. ¶¶ 27-31), there is nothing coercive about the tender offer. Investors that choose not to participate will not be penalized, but will remain in exactly the same legal and economic position they would have been in had no tender offer occurred. (Exchange OM at 7.) Those investors will retain the same shares, with the same net asset values and all of their legal rights. Nor are there any minimum or maximum participation requirements in the tender offer; the Company will accept as many or as few shares as are tendered on the same terms. (*Id.* at 6.) Thus, the rights of each investor do not depend

---

[5]    Since at the time of initial investment in the fund all investors were required to be accredited investors, the only participants in the tender offer who cannot receive the Participation Share are those who subsequently lost their accredited investor status. This limitation is necessary because Participating Shares, like all other Company shares, are unregistered, and thus cannot be sold to investors that are not accredited. Plaintiff does not allege that it is not an accredited investor or that it will not be able to receive Participation Shares. The Company has disclosed that recoveries above 45 cents a share are unlikely (Exchange OM at 3), and thus Participation Shares are likely to have no value.

upon what any other investor decides. While the tender offer permits investors who tender their shares early the right to receive their cash payments before the expiration date, investors who take advantage of this "early settlement" option can revoke their tender at any time before the expiration date without consequence. (*Id.* at 7, 19.)

### D.   <u>Alleged Misrepresentations and Omissions in the Exchange OM</u>

The crux of plaintiff's claims is that the Exchange OM is fraudulent because it allegedly fails to provide information that plaintiff claims it needs to decide whether to tender its shares. (*E.g.*, Compl. ¶¶ 16-26.)

#### 1.   <u>Current NAV</u>

Plaintiff complains that the Exchange OM provides the net asset value of its shares only as of March 31, 2008, and not as of any more recent date. (*Id.*) Plaintiff does not dispute the accuracy of the March 31 NAV, but contends that more recent information would be useful in deciding whether or not to tender. But March 31 was the most recent date for which net asset values were available when the tender offer materials were distributed. Consistent with the Company's practices, updated values as of April 30, 2008 will be provided to investors in their next monthly statement posted online on or about May 28, 2008 and distributed shortly thereafter, and values as of May 31, 2008 will be available on or about June 28, 2008. (O'Brien Aff. ¶ 11.)

#### 2.   <u>Method of calculating NAV</u>

Plaintiff claims that the Exchange OM fails to disclose the methodology used to calculate NAV. (Compl. ¶ 17.) But that methodology is disclosed in the Falcon OM. (Falcon OM at 4, 37-38.) This method of valuation—which relies on asset valuations from independent third parties—has not changed since the inception of the Company. (O'Brien Aff. ¶ 9.) The Complaint contains no allegation to the contrary and no quarrel with the methodology.

8

3.    Information about individual Company assets

Plaintiff complains that the Company has failed to provide asset-by-asset information about its investments sufficient to enable investors to perform their own NAV computations. (Compl. ¶ 18.) Consistent with the Company's past practices, however, the Exchange OM discloses both total asset values and the percentage value in each of the five asset classes. (O'Brien Aff. ¶ 23.) Providing the asset-by-asset detail that plaintiff seeks would be detrimental to the Company and its investors, because wide disclosure of detailed proprietary information about its holdings would impede the Company's ability to liquidate its assets at the most favorable possible price. (*Id.* ¶ 15.)

4.    Released claims

Plaintiff contends that the Exchange OM improperly fails to disclose sufficient information regarding claims that tendering investors are being asked to release. (Compl. ¶ 19.) In fact, however, the Exchange OM discloses the only claim that has been asserted relating to Falcon, as well as an informal SEC inquiry.[6]  It also sets forth the terms of the release (which, in essence, encompasses claims arising from investments in the Company). (*See generally* Exchange OM at 5, 23.) The additional "disclosures" plaintiff seeks regarding unasserted and unthreatened claims would be pure speculation.

---

[6]    Since the original Exchange OM, the Company has twice supplemented the Exchange OM, to provide, among other things, addition information about relevant legal proceedings. (O'Brien Aff. ¶ 24 and Ex. J [Exchange Offering Memorandum Supplement of May 15, 2008] and Ex. K [Supplement of May 23, 2008 ("Supp. Exchange OM")].) With respect to the previously-filed class action disclosed in the original Exchange OM, the supplement discloses that the case has since been voluntarily dismissed, and that neither Falcon nor any other defendant provided any payment or other consideration to the plaintiff in that case in exchange for dismissing the case. (Supp. Exchange OM at 1.) The Supplemental Exchange OM further discloses that Citigroup has received two requests for documents from the SEC relating to certain Citi-managed hedge funds as part of an informal inquiry and that Citigroup is cooperating with the SEC. (*Id.*)

5.     Reasons for the Company's losses

Plaintiff claims that the Exchange OM misrepresents the events that caused Falcon to lose a significant part of its value.  (Compl. ¶¶ 23-25).  It claims that the Company lost money because it did not employ the promised "conservative" investment strategies, but rather implemented other "risky" strategies.  As shown above, however, Falcon's strategies and the risks associated with them were fully disclosed in the OM and other documents provided to investors.  (*See* pp. 3-6, above.)

6.     Purpose of the tender offer

Finally, plaintiff asserts that the Exchange OM misrepresents the reasons for the tender offer.  (Compl. ¶ 26.)  Plaintiff alleges that the Exchange OM "fail[s] to disclose that the primary reason [defendants] have initiated the tender offer is to limit or entirely eliminate their liability by requiring investors who tender to agree to the Release."  (*Id.*)  But the Exchange OM fully discloses the terms of the release and that the release is a precondition to receiving the tender consideration; as shown below, nothing further is required.

## Argument

Plaintiff is not entitled to injunctive relief because it has satisfied none of the requirements.  Neither is it entitled to expedited discovery—or any discovery—because it has not shown the prejudice necessary to lift the automatic stay of discovery under the PSLRA.

## I.    PLAINTIFF HAS NOT ESTABLISHED ANY OF THE PREREQUISITES FOR A PRELIMINARY INJUNCTION

"To secure a preliminary injunction in district court, the moving party must demonstrate '(1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and balance of hardships tipping decidedly in

10

its favor.'" *MONY Group, Inc.* v. *Highfields Capital Mgmt., L.P.I*, 368 F.3d 138, 143 (2d Cir. 2004) (quoting *Forest City Daly Hous., Inc.* v. *Town of N. Hempstead*, 175 F.3d 144, 149 (2d Cir. 1999)). Plaintiff has not satisfied *any* of these requirements.

A.    **Plaintiff Has Not Demonstrated Irreparable Harm**

To demonstrate irreparable harm due to alleged violations of the federal securities laws, a plaintiff must show that monetary damages cannot provide an adequate remedy. *Rondeau* v. *Mosinee Paper Corp.*, 422 U.S. 49, 60 (1975); *Tom Doherty Assocs.* v. *Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995). Courts will not enjoin a tender offer where the threatened injury is purely economic and can be adequately compensated after the fact by money damages. *See Gold Fields Ltd.* v. *Harmony Gold Mining Co. Ltd.*, No. 04 Civ. 8767(RMB), 2004 WL 2710030, at *5 (S.D.N.Y. Nov. 23, 2004) (denying injunction against tender offer where plaintiff would have adequate damages remedy against corporate entities after the tender); *Ranger Oil Ltd.* v. *Petrobank Energy & Res. Ltd.*, No. 00 Civ. 3139 (SHS), 2000 WL 33115906, at *9 (S.D.N.Y. May 23, 2000) (denying injunction where damages would be available after tender); *Iavarone* v. *Raymond Keyes Assocs.*, 733 F. Supp. 727, 732 (S.D.N.Y. 1990) (denying injunction against tender offer where plaintiff could be "fully compensated through post-transaction litigation"); *see also Hanson Trust PLC* v. *SCM Corp.*, 774 F.2d 47, 61 (2d Cir. 1985) (vacating injunction against tender offer and noting plaintiff likely had an adequate damages remedy). Thus, plaintiff "'must point to one or more 'unravelable' or otherwise irreparable harms that will result if the instant Exchange Offer is not enjoined.'" *Gold Fields*, 2004 WL 2710030, at *4 (quoting *Schmidt* v. *Enertec Corp.*, 598 F. Supp. 1528, 1544 (S.D.N.Y. 1984); *see also Iavarone*, 733 F. Supp. at 731.[7]

---

[7]    Delaware law is no different. Delaware courts will not prevent a tender offer if an effective damages remedy is available. *See Gradient OC Master, Ltd.* v. *NBC Universal, Inc.*, 930

Plaintiff has not explained and cannot explain how it will be irreparably harmed by the tender offer. The tender offer does not, for example, cause the plaintiff to lose any future potential business opportunity or be forced out of an operating company. Instead, plaintiff merely complains that it cannot determine with certainty whether accepting or declining the tender offer will yield the best economic outcome. But even if plaintiff possessed a cognizable claim based on that uncertainty, any shortcoming can be remedied with monetary damages. *See Iavarone*, 733 F. Supp. at 732 ("[M]oney damages will fully compensate plaintiff if he shows at trial or otherwise that violations of section 14(e) of the Williams Act harmed his ability to make an informed choice with regard to the proposed transaction."); *Ranger Oil*, 2000 WL 33115906, at *9 ("[A]llegedly aggrieved [shareholders] may bring an action for monetary damages to recover the difference in value between the price they received on the sale of the shares . . . and the value of the shares if the alleged insider information had been publicly known.")

Furthermore, any potential damages, if appropriate, are easily calculated. The Exchange OM clearly sets forth the exchange consideration, and the eventual distributions from the Company will be known once the liquidation process has concluded. Any damages are readily determinable based upon the difference between these two amounts.[8]

---

A.2d 104, 131-32 (Del. Ch. 2007) (noting there is "no *per se* right to injunctive relief merely because a tender offer may be defective," and denying injunction where plaintiffs had "an adequate remedy at law available to them in the form of money damages"); *Warner Commc'ns, Inc.* v. *Chris-Craft Indus., Inc.*, Civ. No. 10817, 1989 WL 85085, at *6 (Del. Ch. July 21, 1989) (finding potential misinformation in exchange offer did not lead to irreparable injury when money damages would be available); *Cottle* v. *Carr*, 1988 WL 10415, at *5 (Del. Ch. Feb. 9, 1988) (same); *see also In re Siliconix Inc. S'holders Litig.*, No. Civ. A. 18700, 2001 WL 716787, at *17 (Del. Ch. June 19, 2001) (denying injunction where primary concern is fairness of price and damages would be available).

[8]  In any event, mere difficulty in quantifying damages does not justify injunctive relief. *See Iavarone*, 733 F. Supp. at 732; *Schmidt*, 598 F. Supp. at 1544.

The cases on which plaintiff relies, by contrast, involve situations in which a court would be unable to reverse the effects of the tender offer. (Pl. Mem. at 7-8.) In *Consol. Gold Fields PLC* v. *Minorco, S.A.*, 871 F.2d 252 (2d Cir. 1989), the resulting merger would have resulted in a permanent and substantial structural changes to the world gold market, making post-merger damages insufficient. *Id.* at 261. Both *Lichtenberg* v. *Besicorp Group Inc.*, 43 F. Supp. 2d 376 (S.D.N.Y. 1999) and *In re Pure Resources, Inc. Shareholders Litigation*, 808 A.2d 421 (Del. Ch. 2002), involved anticipated mergers following the tender, thus potentially depriving shareholders of participation in the company even if they refused the tender. And in *Phillips* v. *Instiuform of North America, Inc.*, Civ. A. No. 9173, 1987 WL 16285 (Del. Ch. Aug. 27, 1987), the proposed restructuring threatened to permanently alter the voting rights of a class of stockholders. *Id.* at *11. Here, by contrast the tender offer will not result in any such irrevocable changes.[9]

Plaintiff also argues it will suffer irreparable harm because the tender offer may cause Falcon to become insolvent, thus depriving it of its ability to pursue legal claims against it. (Pl. Mem. at 8.) As discussed above, however (p. 7), the tender offer will not affect Falcon's solvency: for each payment by the Company under the tender offer, Citigroup will invest an

---

[9] Plaintiff also relies on *Sonesta International Hotels Corp.* v. *Wellington Assocs.*, 483 F.2d 247 (2d Cir. 1973). But that case was decided before the Second Circuit clarified its current standards for preliminary injunctions, and is thus no longer considered good law. *See Gold Fields*, 2004 WL 2710030, at *4 (citing cases questioning *Sonesta*'s continuing validity). In any event, *Sonesta* involved a tender offer that, among other things, could have resulted in a change in control in the company that would have prevented the company from selling certain properties and may have resulted in the company from being delisted from the New York Stock Exchange—an event that would have profoundly affected the interests of shareholders who did not tender. *Sonesta*, 483 F.2d at 251-55. Here, as discussed (pp. 7-8), the tender offer will not affect the rights of non-tendering shareholders.

equivalent amount. (Exchange OM at 1.) And neither the tender offer nor the liquidation of Falcon will adversely affect the ability of the other defendants to satisfy an award of damages.

**B.** **Plaintiff Cannot Show Likelihood of Success on the Merits or a Substantial Legal Question**

1. The Complaint Does Not Allege Any Misstatements or Omissions Actionable Under §§ 10(b) or 14(e)

To state a claim under Sections 10(b) and Rule 10b-5 or Section 14(e), plaintiff must allege that the defendants either made a materially false statement or omitted a material fact necessary to make the statements made not misleading. *Ganino* v. *Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000); 17 C.F.R. § 240.10b-5(b); *Skydell* v. *Ares-Serono S.A.*, 892 F. Supp. 498, 501 (S.D.N.Y. 1995) (equating the elements of a § 14(e) claim to those of a Rule 10b-5 claim); *Am. Insured Mortgage Investors* v. *CRI, Inc.*, No. 90 Civ. 6630 (MBM), 1990 WL 192561, at *6 (S.D.N.Y. Nov. 26, 1990) ("In order to prove a violation of § 14(e), a party must establish … that the defendants made an untrue statement of fact or omitted to state a fact necessary to make statements made not misleading in connection with a tender offer . . ."). Under the PSLRA's heightened pleading standards, a complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . ." 15 U.S.C. § 78u-4(b)(1). Plaintiffs must do more than allege that statements were materially misleading: "they must demonstrate with specificity why and how that is so." *Rombach* v. *Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

Moreover, absent a duty to disclose a particular piece of information, a mere omission is not actionable under Section 10(b) and Rule 10b-5 or Section 14(e). "[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." *In re Time Warner Inc.*

14

*Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993). Unlike, for example, Section 14(a) and the rules promulgated thereunder, which impose affirmative duties to disclose certain information, *see, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 536 F. Supp. 2d 313, 320-21 (S.D.N.Y. 2007), Sections 10(b) and 14(e) impose no affirmative duty to disclose facts beyond those necessary to make the statements made not misleading. *In re Time Warner*, 9 F.3d at 268 ("[O]ne circumstance creating a duty to disclose arises when disclosure is necessary to make prior statements not misleading."). Plaintiff has not alleged any omission in the Exchange OM that renders any statement therein misleading.

Although the Complaint uses boilerplate language alleging misleading statements and omissions, its principal allegations are simply that the Exchange OM *omits* information that plaintiff thinks would be useful:

- "One of the most glaring *omissions* in the Memorandum is the absence of any information permitting investors to accurately value their shares. . . . Nor does it provide investors with the means to calculate value themselves. This information, however, is perhaps the most material to investors . . . ." (Compl. ¶ 17; emphasis added.)

- "A similarly glaring *omission* is the absence of any specific information regarding the nature or value of the Company's underlying assets . . . ." (*Id.* ¶ 18; emphasis added.)

- "Another significant *omission* in the Memorandum is its failure to disclose sufficient information regarding the nature of the existing and potential claims covered by the Release . . . ." (*Id.* ¶ 19; emphasis added.)

- "*Investors have not been provided with any information* regarding the resolution or discontinuation of [the previously disclosed class] action, even though such information may very well bear on the propriety of any claims they may have against the defendants."(*Id.* ¶ 20; emphasis added.)

- "[A]lthough the Memorandum indicates that Citigroup is responding to [a regulatory] inquiry, defendants *have not disclosed* any additional information regarding the inquiry, including the nature and content of its response." (*Id.* ¶ 21; emphasis added.)

- "Additionally, *investors cannot determine for themselves* whether the liquidation of [Falcon's] assets may generate proceeds that exceed the amount of the Tender Offer consideration." (*Id.* ¶ 22; emphasis added.)

The Complaint makes no effort to identify a statement rendered misleading by the absence of this information. And neither the Complaint nor plaintiff's brief identifies any independent duty on the part of defendants to disclose it. In effect, plaintiff is attempting to use the antifraud laws to create disclosure requirements that neither Congress nor the SEC has chosen to impose on transactions such as this one.

Even if there were a free-floating requirement that Falcon provide to investors any information they might desire (which there is not), the allegedly omitted information consists of items that plaintiff already has or will soon have, or that it has no right to expect.[10] As described above (pp. 8-10), plaintiff has received and will continue to receive updated NAV information; it has a breakdown of assets by category; it has the precise terms of the release and disclosure of the only claim that was brought against Falcon (aside from an individual arbitration) and regulatory inquiry; and there is no basis for Falcon to speculate about the future value of its assets or of unasserted claims. *See Consol. Gold Fields, PLC* v. *Anglo Am. Corp. of S. Afr. Ltd.*,

---

[10] Contrary to plaintiff's argument, neither *Broder* v. *Dane*, 384 F. Supp. 1312 (S.D.N.Y. 1974) nor *In re PHLCORP Sec. Tender Offer Litig.*, 700 F. Supp. 1265 (S.D.N.Y. 1998), stands for the proposition that defendants have a duty to disclose based on the defendants' exclusive access to the information. (Pl. Mem. 13.) In *Broder*, the court found that defendant, president, treasurer, a principal shareholder, and a member of the Board of Direcotrs of the offeror in the tender offer, had a duty to disclose his purchase of stock at a price well above the price being offered in the exchange. *Broder*, 384 F. Supp. at 1322. While the court ordered disclosure of the information, the information clearly concerned a crucial insider's own valuation of the securities. In *PHLCORP*, the court found that a failure to disclose the details of an appraisal of an asset held by target corporation stated a claim under § 14(e), noting that the information was not otherwise available. *Id.* at 1272. However, there the plaintiff alleged in the complaint that the offer contained misleading representations regarding the value of the asset, in part due to the lack of information regarding the appraisal. *Id.* at 1270. Here, plaintiff cannot make such an allegation.

713 F. Supp. 1457, 1470 (S.D.N.Y. 1989) ("[A] company is not required to engage in educated guesses or predictions . . . .").

2. The Complaint Fails To Allege Any Misstatements by Reaz Islam

As it relates to Mr. Islam, the Complaint is plainly deficient because it does not identify any statement made by him in connection with the Exchange Offer. The Second Circuit has held that a defendant "must actually make a false or misleading statement in order to be held liable under Section 10(b)," and that "[a]nything short of such conduct is . . . not enough to trigger liability under Section 10(b)." *Wright* v. *Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998); *SEC* v. *Kushner*, 417 F. Supp. 2d 326, 331-32 (S.D.N.Y. 2006); *see In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 234-35 (S.D.N.Y. 2001) (no aiding and abetting under Section 14(e)). Recognizing this deficiency, Plaintiff invokes the "group pleading" doctrine. (Pl. Mem. at 16 n.3.) Yet while this doctrine has been accepted by some district courts within the Second Circuit, the only circuit courts to consider the issue have held that the doctrine did not survive the PSLRA. *See Winer Family Trust* v. *Queen*, 503 F.3d 319, 337 (3d Cir. 2007); *Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*, 437 F.3d 588, 602-03 (7th Cir. 2006), *rev'd on other grounds*, 127 S. Ct. 2499 (2007); *Southland Sec. Corp.* v. *INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364 (5th Cir. 2004). In addition, the Complaint contains no particularized factual allegations that Mr. Islam played any role in the formulation of the tender or Exchange OM. Accordingly, there is no basis on which to attribute statements concerning the tender to Mr. Islam.

3. The Complaint Does Not Allege Facts Giving Rise To A Strong Inference Of Scienter

Plaintiff's federal securities claims suffer from an additional, independent infirmity: they do not "state with particularity facts giving rise to a strong inference that the

17

defendants acted with the required state of mind," as required by the PSLRA, 15 U.S.C. § 78u-4(b)(2), and Fed. R. Civ. P. 9(b). As the Supreme Court held in *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007), this standard is met only if the facts alleged give rise to an inference of fraud that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 127 S. Ct. at 2505. Thus, under *Tellabs*, the Court must consider whether the facts alleged give rise to an inference of fraud in light of any alternative, innocent explanations. *Id.* at 2509.

The Complaint contains nine paragraphs of scienter allegations (Compl. ¶¶ 32-40), but seven of them are entirely irrelevant to its legal claim. The first seven paragraphs allege, in effect, that defendants should have known they were mismanaging Falcon (*id.* ¶¶ 32-38)—allegations that, even if they were factually supportable, are patently irrelevant to its claims for relief, which are based solely upon alleged misleading disclosures in the Exchange OM. (*See id.* ¶¶ 48-49, 55-56, 63-64). The remaining two paragraphs contain boilerplate allegations that defendants had access to material information, occupied positions of power and control, and had the ability to issue statements on the Company's behalf. (*Id.* ¶¶ 39-40.) The courts have repeatedly held that allegations of this type are insufficient to plead scienter. *San Leandro Emergency Med. Group Profit Sharing Plan* v. *Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996); *Goplen* v. *51job, Inc.*, 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006) ("[B]are assertions [that defendants, due to their high-level positions in the Company, had access to adverse undisclosed financial information through internal corporate documents, meetings, and reports], without any further facts or details, do not adequately demonstrate defendants' knowledge of facts or access to information contradicting their public statements."); *In re Take-Two Interactive Sec. Litig.*, No. 06 Civ. 803(SWK), 2008 WL 1757823, 18 (S.D.N.Y. 2008) (where plaintiffs "have failed to

allege anything other than a generalized motive to profit…, they have failed to allege … a cognizable motive to commit fraud.").[11]

   4.   Plaintiff Has Not Stated A Claim for Breach of Fiduciary Duty or Aiding and Abetting Breach of Fiduciary Duty Under Delaware Law

Plaintiff has also failed to state a valid claim under Delaware law.  Plaintiff alleges that the tender offer violates Delaware law because (i) the Exchange OM contains false or misleading disclosures and (ii) the offer is wrongfully coercive.  (Compl. ¶¶16-31.)  Even assuming the existence of a fiduciary duty, plaintiff cannot establish a breach under either theory.

      (a)   Defendants Have Disclosed All Material Information

Under Delaware law, fiduciaries need only disclose *material* information, and "[o]mitted facts are not material simply because they might be helpful."  *Skeen* v. *Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000).  Instead, the requested information must "significantly alter the total mix of information already provided."  *Id.*  Delaware courts have found disclosures sufficient when the offeror has provided the baseline information necessary to make an informed investment decision.  In *Skeen*, for example, plaintiffs challenged the adequacy of disclosures given to shareholders in connection with a cash-out merger, claiming they were entitled to additional information about the history of the merger, the board and the acquirer's plan for the company, the methodology used to calculate the fair value of the offered merger price, financial projections, and other data.  *Id.* at 1172.  The Delaware Supreme Court rejected the plaintiff's claims, holding that a corporation had no obligation to provide sufficient information to allow a stockholder to make an independent determination of fair value.  *Id.* at 1174.

---

[11]   *See also Sheppard* v. *TCW/DW Term Trust 2000*, 938 F. Supp. 171, 174-75 (S.D.N.Y. 1996) (finding no strong inference of scienter where defendants "truthfully represented and adequately disclosed their investment strategies and the inherent risks therein"); *Podany* v. *Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 156 (S.D.N.Y. 2004) (fact that investment opinions are later proved mistaken is insufficient to support strong inference of scienter.).

Likewise, in *Weiss* v. *Samsonite Corp.*, 741 A.2d 366 (Del. Ch. 1999), plaintiffs sought information on the methodology the board had used to calculate the offer price in a self-tender transaction used to implement a capital reorganization plan. *Id.* at 370-71. The court rejected the claim because the board had disclosed the offer price, various historical financial data about the company, the details of the plan and the likely effect of the plan on the market price of the stock, and held that the shareholders possessed all the information needed to make an informed investment decision about whether to tender their stock. *Id.* at 374-75.

Under *Skeen* and *Weiss*, the disclosures here are plainly sufficient. Falcon has provided information sufficient to allow plaintiff to make an informed decision. Although plaintiff may desire more detailed information, defendants are not obligated to provide it.

Plaintiff's allegation that defendants have misrepresented the purpose of the tender offer (Compl. ¶ 26) is equally insufficient. Even if plaintiff had provided any specific allegations to support this claim (which it has not), the offeror's subjective motivation is irrelevant, so long as the offeror provides factual information enabling a shareholder to evaluate the offer on its merits. *Skeen*, 750 A.2d at 1173; *In re MONY Group, Inc. S'holder Litig.*, 853 A.2d 661, 682 (Del. Ch. 2004) (no requirement for company to disclose motivations of offer).

Finally, while plaintiff alleges in conclusory fashion that defendants misrepresented the events surrounding the decline in the value of the Company (Compl. ¶¶ 24-25), plaintiff has not alleged any specific falsehoods, and, as discussed above, plaintiff's allegations in this regard are inconsistent with the Falcon OM. *See In re Siliconix*, 2001 WL 716787, at *10 (denying challenge to allegedly misleading business projection where plaintiff did not make "any serious attempt to show that it [was] wrong"); *Stepak* v. *Scharffenberger*, No. Civ. 6530, 1985 WL 11579, at *3 (Del. Ch. Aug. 9, 1985) (dismissing plaintiff's claims alleging

20

misrepresentations in tender offer where plaintiff failed to show how the statements were misleading).

(b)    <u>The Tender Offer Is Not Coercive</u>

Plaintiff also alleges that the tender offer is coercive because investors will be compelled to sign a release of claims if it accepts the offer.[12]  (Compl. ¶ 29-30.)  Under Delaware law, a tender offer is coercive if it induces shareholders to "tender for reasons unrelated to the economic merits of the offer."  *Weiss*, 741 A.2d at 372.  The mere fact that plaintiff may find the terms of the tender offer so attractive that it finds it difficult not to tender (and in doing so accept the release) does not make the offer coercive.  *Weiss*, 741 A.2d at 372 ("An offer that is economically 'too good to resist' . . . would not, for that reason alone, be actionably coercive.") (internal citation omitted).  And, where a non-tendering shareholder will retain all his rights and existing economic interests, courts will not find the offer to be coercive.  *See In re Marriott Hotel Props. II Ltd. P'ship Unitholders Litig.*, No. Civ. A. 14961, 2000 WL 128875, at *18 (Del. Ch. Jan. 24, 2000).

Under these standards, the offer here is not coercive.  If plaintiff believes that the release is unduly broad, it is free to decline the offer.  Other investors may reach a different conclusion.  Either way, investors are free to decide whether to accept based entirely on the perceived economic merits of the offer.  And, as in *Marriott*, non-tendering shareholders retain all of their pre-existing rights and interests.

---

[12]  Plaintiff also asserts that the tender offer is coercive because (i) its early settlement function induces shareholders to tender early, and (ii) it requires them to agree to arbitration. Although shareholders are permitted to tender early, they are permitted to revoke at any time before the close of the offer.  (Exchange OM at 19-22.)  This feature is therefore not "coercive."  As to the arbitration clause, shareholders are already required to arbitrate all claims arising from their investment in the Company (Subscription Agreement at 6), so this condition does not impose any additional obligations, and cannot therefore be coercive.

21

C.    **The Balance of the Hardships Tips Against an Injunction**

The balance of hardships here weighs strongly in favor of defendants. Plaintiff is free to tender its shares and receive cash immediately and the equivalent number of Participation Shares. Or, if it prefers, it may retain all of its existing rights to distributions from the Company.

If this Court were to enjoin the tender offer, by contrast, over 400 investors would be denied the opportunity to take advantage of the immediate liquidity the tender offer provides, and would be denied the opportunity to obtain a distribution well in excess of that expected to result from the liquidation of the Company. The plaintiff should not be allowed to block an exchange that has the potential to benefit all shareholders, and the balance of hardships therefore weighs strongly against granting an injunction here. *See First Eagle Sogen Funds, Inc.* v. *Bank for Int'l Settlements*, No. 01 Civ. 0087 (RO), 2001 WL 66321, at *3 (S.D.N.Y. Jan. 26, 2001) (balance of hardships weighed against enjoining private buyback of shares when to do so would deprive other shareholders of immediate payment); *John Labatt Ltd.* v. *Onex Corp.*, 890 F. Supp. 235, 249 (S.D.N.Y. 1995) (balance of hardships tipped in favor of defendants when enjoining tender offer would delay opportunity of shareholders to participate in tender offer); *Schmidt*, 598 F. Supp. at 1546-47 (balance of hardships weighed against injunction where stakeholders might lose "an opportunity to improve the value of their investment" through the tender); *see also Olesh* v. *Dreyfus Corp.*, No. 94 Civ. 2909 (CPS), 1994 WL 780189, at *13 (E.D.N.Y. Aug. 5, 1994) (in absence of showing of irreparable harm, hardships resulting from delay of merger tipped balance toward defendants).

## II.    THE PSLRA STAY OF DISCOVERY SHOULD NOT BE LIFTED

Plaintiff's purported reason for requiring expedited discovery is a smokescreen. While it speaks of a need "to develop a complete record in anticipation of an application for injunctive relief or where exigent circumstances require it" (Pl. Mem. at 24), the discovery it

seeks is not so limited. Rather, plaintiff seeks the information that is the end-game of its entire lawsuit. Having failed to show any entitlement to this information, it should not be awarded it in the guise of expedited discovery.

Moreover, under the PSLRA, in all securities actions under its purview, such as this one,[13] "all discovery … *shall be stayed* during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B); emphasis added. The stay applies until the time to file a motion to dismiss expires, even if the defendant has not yet brought such a motion. *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1133 (N.D. Cal. 2002); *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 682-83 (D. Md. 2000).

Plaintiff cannot establish the "exceptional circumstances" required to lift the PSLRA stay. *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (GEL), 2006 WL 2337212, at *1 (S.D.N.Y. Aug. 8, 2006); *Vacold LLC* v. *Cerami*, No. 00 Civ. 4024 (AGS), 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001) ("[U]nless exceptional circumstances are present, discovery… is permitted only after the court has sustained the legal sufficiency of the complaint."). In particular, before the stay may be lifted, the party seeking discovery must show that discovery is necessary to either preserve evidence or prevent undue prejudice to the plaintiff. 15 U.S.C. § 78u-4(b)(3)(B). Plaintiff does not even purport to make such a showing.

Plaintiff contends that discovery would be useful to pursue its motion for a preliminary injunction (Pl. Mem. at 24), but that is not sufficient. In *Medical Imaging Centers of America, Inc.* v. *Lichtenstein*, 917 F. Supp. 717 (S.D. Cal. 1996), for example, the plaintiff moved for a preliminary injunction and demanded that the court lift the PSLRA discovery stay

---

[13]    The PSLRA discovery stay applies to the plaintiff's state law claims as well as its federal claims. *See SG Cowen Sec. Corp.* v. *U.S. Dist. Court for Northern Dist. of Cal.*, 189 F.3d 909, 913 n.1 (9th Cir. 1999); *In re Trump S'holder Litig.*, No. 96 Civ.7820 (DAB)(HBP), 1997 WL 442135 (S.D.N.Y. Aug. 5, 1997) (same).

because there was an imminent shareholders' meeting that could result in the change of corporate control. *Id.* at 718. The court found that this element of time pressure was common in the majority of cases involving corporate control and did not, in and of itself, constitute undue prejudice. *Id.* at 722. The court noted that the plaintiff would not be precluded from seeking post-election remedies for the alleged violations. *Id.*

So, too, here. If the plaintiff elects not to tender its shares, its ability to seek redress for any alleged violations is not affected. As such, this case differs from the cases on which plaintiff relies (Pl. Mem. at 24-25) in which the stay was lifted because not doing so would result in the inability of the plaintiff to seek any redress at all. *See Global Intellicom, Inc. v. Thomson Kernighan & Co.*, No. 99 Civ. 342(DLC), 1999 WL 223158, at *2 (S.D.N.Y. Apr. 16, 1999) (permitting limited discovery when impending corporate takeover may "prevent [the plaintiff] from seeking redress in this court"); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (discovery stay lifted in "unique circumstances" where plaintiffs had to compete with plaintiffs in other actions who were not subject to the discovery stay for WorldCom's limited funds). There is no such prejudice here.

For the same reasons, plaintiff would not be entitled to discovery even under the more lenient, non-PSLRA's "good cause" standard it cites. (Pl. Mem. at 25.) Plaintiff does not need discovery to establish an affirmative misrepresentation in the Falcon OM, because it does not allege any such misrepresentation. Nor does plaintiff need discovery to establish that Falcon had an affirmative duty to disclose additional information to investors, because the existence or non-existence of such a duty is a matter of law.[14]

---

[14] Plaintiff's request to lift the discovery stay should be denied for the additional reason that its discovery requests are overbroad and insufficiently particularized. *See* 15 U.S.C. § 78u-4(b)(3)(B); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583(WHP), 2006 WL

## Conclusion

For the foregoing reasons, the defendants respectfully request that the plaintiff's application for a preliminary injunction and expedited discovery be denied.

Dated:    May 28, 2008
          New York, New York

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By: /s/ Charles E. Davidow
     Brad S. Karp
     Charles E. Davidow
     Michael E. Gertzman
     Jonathan H. Hurwitz
     Kristy M. Tillman

1285 Avenue of the Americas
New York, New York 10019-6064
Email: cdavidow@paulweiss.com
Tel.: (212) 373-3000
Fax: (212) 757-3980

Attorneys for the Defendants Falcon Strategies Two
LLC, Amacar GP, Inc., Citigroup Alternative
Investments LLC, and Citigroup Inc.

---

1738078, at *1 (S.D.N.Y. June 26, 2006). Indeed, they purport to require information bearing no relationship whatever to the tender offer, *e.g.,* all documents concerning Citigroup, Inc.'s responses "to any regulatory or criminal inquiry or investigation of which they are aware, including the inquiry referred to in the Memorandum," and documents sufficient to disclose "any civil litigation of which Defendants are aware concerning . . . Defendants . . . ." (Pl. Mem. Ex. D, Requests No. 9, 12)

ARKIN KAPLAN RICE LLP

By: /s/ Sean R. O'Brien
    Sean R. O'Brien
    590 Madison Avenue
    35th Floor
    New York, New York 10022
    Tel.: (212) 333-0200
    Fax: (212) 333-2350
    sobrien@arkin-law.com

    *Attorney for Reaz Islam*

    Filed on behalf of Reaz Islam upon consent.

AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS

STATE OF NEW YORK    )
                         )   ss.:
COUNTY OF NEW YORK  )

Leana Loncarevic, being duly sworn, deposes and says:

1. I am not a party to this action, am over 18 years of age and am employed by Paul,

Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York,

New York 10019.

2. On May 28, 2008, I served true copies of the attached: DEFENDANTS'

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR

EXPEDITED DISCOVERY AND A PRELIMINARY INJUNCTION and AFFIDAVIT

OF JAMES O'BRIEN on the following:

Samuel H. Rudman
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747

3. I made such service by placing true copies of the aforementioned documents in a

properly addressed prepaid wrapper and delivering it to a Federal Express office for

Priority Overnight Delivery.

_____
Leana Loncarevic
Licence No.: 1262377

Sworn to before me this
28th day of May, 2008

_____
Notary Public

HERMAN M. WINKLES JR.
Notary Public, State of New York
No. 01WI5049365
Qualified in New York County
Commission Expires Sept. 18, 2009