UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x
FERGUSON FAMILY TRUST, On Behalf of : Civil Action No. 08-cv-4723 (SHS)
Itself and All Others Similarly Situated, :
                                          :
                 Plaintiff,               : CLASS ACTION
                                          :
        vs.                               :
                                          :
FALCON STRATEGIES TWO LLC,                :
AMACAR GP, INC., CITIGROUP                :
ALTERNATIVE INVESTMENTS LLC,              :
CITIGROUP, INC. and REAZ ISLAM,           :
                                          :
                 Defendants.              :
————————————————————— x

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................................1

II. ARGUMENT....................................................................................................................1

    A. Defendants' Opposition Does Not Refute Plaintiff's Showing of a Likelihood of Success or Sufficiently Serious Questions on the Merits .................1

        1. Defendants Had a Duty to Disclose the Omitted Information.....................2

        2. The Misstatements and Omissions Concern Material Facts.......................7

    B. Defendants Have Not Shown That Injunctive Relief Is Inappropriate Because Money Damages Are Available or the Equities Preclude It.....................9

III. CONCLUSION................................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

*American Insured Mortg. Investors v. CRI, Inc.*,
  No. 90-cv-6630 (MBM), 1990 U.S. Dist. LEXIS 15787
  (S.D.N.Y. Nov. 26, 1990) ..................................................................................................5, 6

*Arnold v. Society for Sav. Bancorp., Inc.*,
  650 A.2d 1270 (Del. 1994) .......................................................................................................6

*Ballan v. Wilfred Am. Ed. Corp.*,
  720 F. Supp. 241 (E.D.N.Y. 1989) ...........................................................................................2

*Berger v. Pubco Corp.*,
  No. 3414-CC, 2008 WL 2224107
  (Del. Ch. May 30, 2008) ..........................................................................................................8

*Erickson v. Centennial Beauregard Cellular LLC*,
  No. 19974, 2003 Del. Ch. LEXIS 38
  (Del. Ch. Apr. 11, 2003) ...........................................................................................................7

*Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*,
  No. 99-cv-10517 (HB), 1999 U.S. Dist. LEXIS 16996
  (S.D.N.Y. Nov. 2, 1999) ...........................................................................................................9

*Freedman v. Restaurant Assocs. Indus., Inc.*,
  No. 9212, 1990 Del. Ch. LEXIS 142
  (Del. Ch. Sept. 21, 1990) ......................................................................................................6, 8

*Gold Fields Ltd. v. Harmony Gold Mining Co. Ltd.*,
  No. 04-cv-8767 (RMB), 2004 U.S. Dist. LEXIS 23874
  (S.D.N.Y. Nov. 23, 2004) .........................................................................................................9

*Hanson Trust PLC v. SCM Corp.*,
  774 F.2d 47 (2d Cir. 1985) .....................................................................................................10

*Iavarone v. Raymond Keyes Assoc., Inc.*,
  733 F. Supp. 727 (S.D.N.Y. 1990) .........................................................................................10

*In re JPMorgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ......................................................................................2

**Page**

*In re Netsmart Techs., Inc. S'holders Litig.*,
    924 A.2d 171 (Del. Ch. 2007)..................................................................................................7

*In re Par Pharm., Inc. Sec. Litig.*,
    733 F. Supp. 668 (S.D.N.Y. 1990)............................................................................................2

*In re Pure Resources, Inc. S'holders Litig*,
    808 A.2d 421 (Del. Ch. 2002)................................................................................................7, 8

*In re Ramp Sec. Litig.*,
    No. 05-cv-6521 (DLC), 2006 U.S. Dist. LEXIS 49579
    (S.D.N.Y. July 21, 2006) ..........................................................................................................2

*In re Regeneron Pharms. Sec. Litig.*,
    No. 94-cv-1785 (CLB), 1995 U.S. Dist. LEXIS 4023
    (S.D.N.Y. Mar. 10, 1995) .....................................................................................................2, 3

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
    No. 00-cv-1041 (DLC), 2000 U.S. Dist. LEXIS 12504
    (S.D.N.Y. Aug. 30, 2000) .........................................................................................................2

*In re Time Warner, Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993), *cert. denied*, 511 U.S. 1017 (1994)...........................................3

*In re The Topps Co. S'Holder Litig.*,
    926 A.2d 58 (Del. Ch. 2007)....................................................................................................3

*Ranger Oil Ltd. v. Petrobank Energy & Res. Ltd.*,
    No. 00-cv-3139 (SHS), 2000 U.S. Dist. LEXIS 7571
    (S.D.N.Y. May 23, 2000).........................................................................................................9

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
    185 F. Supp. 2d 389 (S.D.N.Y. 2002).....................................................................................2

*Rondeau, v. Mosinee Paper Corp.*,
    422 U.S. 49 (1975)....................................................................................................................9

*Shamrock Holdings of Cal., Inc. v. Iger*,
    No. 1330-N, 2005 Del. Ch. LEXIS 83
    (Del. Ch. June 6, 2005) ............................................................................................................7

*Skeen v. Jo-Ann Stores, Inc.*,
    750 A.2d 1170 (Del. 2000) ......................................................................................................7

**Page**

*United Paperworkers Int'l Union v. International Paper Co.*,
    801 F. Supp. 1134 (S.D.N.Y. 1992)..................................................................................2

*Weiss v. Samsonite Corp.*,
    741 A.2d 366 (Del. Ch. 1999)..........................................................................................7

*Zirn v. VLI Corp.*,
    621 A.2d 773 (Del. 1993) ................................................................................................6

*Zirn v. VLI Corp.*,
    681 A.2d 1050 (Del. 1996) ..........................................................................................3, 7

Plaintiff Ferguson Family Trust ("Plaintiff") respectfully submits this reply memorandum of law in further support of its motion by order to show cause to preliminarily enjoin the Tender Offer.[1]

## I. PRELIMINARY STATEMENT

This is not a typical securities fraud case, in which it is alleged that corporate insiders perpetrated a scheme to defraud investors and where money damages can remedy the harm. Rather, this case concerns a failure to disclose material information to investors in the context of the Tender Offer, which leaves investors with no choice but to make an uninformed decision about whether to tender their shares and release any legal claims – a harm that can only be remedied before the Tender Offer expires within the next two weeks, by requiring additional disclosure. In the absence of this relief, investors will remain unaware of even the most basic information, such as the current value of the Company's shares, assets and investments; the nature and value of the claims they must release if they tender; the scope of the SEC inquiry; and Citigroup's plans to liquidate the Company, as well as how those plans will be impacted by defendant Islam's recent resignation. The need for this information is heightened by the fact that Falcon is a private entity for which Citigroup and its affiliates – which manage the Company, but seek to acquire it and obtain a complete release of investor claims in the Tender Offer – control access to this information, to their advantage.

## II. ARGUMENT

### A. Defendants' Opposition Does Not Refute Plaintiff's Showing of a Likelihood of Success or Sufficiently Serious Questions on the Merits

Mischaracterizing the scope of their duty to disclose all material facts to investors under Delaware law, and their obligation under the federal securities laws to disclose sufficient information to avoid making the disclosures already made misleading, Defendants argue that they are not

---

[1] Capitalized terms have the meaning ascribed to them in the Complaint and Plaintiff's opening brief.

required to disclose the omitted information at issue because they have no duty to do so and the information is not material. They further argue that the information they disclosed is literally true and that they did not make any misstatements that can support a securities law claim or which would require further disclosure. They are incorrect.[2]

### 1. Defendants Had a Duty to Disclose the Omitted Information

As shown in Plaintiff's opening brief, once Defendants spoke about matters relating to the omitted information at issue, they assumed a duty to do so in a complete and accurate manner and to make additional disclosure as necessary "to avoid rendering the statements made misleading."[3] *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 675 (S.D.N.Y. 1990); *see also In re Ramp Sec. Litig.*, No. 05-cv-6521 (DLC), 2006 U.S. Dist. LEXIS 49579, at *38 (S.D.N.Y. July 21, 2006) (once defendant "touched on" an ethical violation he was not required to disclose, "he was required to speak accurately" about it); *In re Regeneron Pharms. Sec. Litig.*, No. 94-cv-1785 (CLB), 1995 U.S. Dist. LEXIS 4023, at *7 (S.D.N.Y. Mar. 10, 1995) (once statements were made about a drug they had to be "complete and accurate"); *United Paperworkers Int'l Union v. International Paper Co.*,

---

[2]    Defendants also argue that the Complaint does not allege scienter and that defendant Islam is not alleged to have made any misleading statements. Here, however, Plaintiff has alleged sufficient facts to give rise to a strong inference that Defendants knowingly or recklessly disregarded information which indicated that their statements were misleading when made. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 185 F. Supp. 2d 389, 403-404 (S.D.N.Y. 2002). In fact, Defendants admit that they did not disclose the omitted information (arguing instead that they did not have a duty to do so), and concede that they had (and have) sole access to the information. Islam's attempt to distance himself from the misleading statements at issue disregards the continued viability of the group pleading doctrine in this District and that knowledge of the core operations of a company is properly imputable to a high-level executive officer, as this Court recently recognized in *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 627-628 (S.D.N.Y. 2005).

[3]    "A statement is materially misleading if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information available." *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00-cv-1041 (DLC), 2000 U.S. Dist. LEXIS 12504, at *12 (S.D.N.Y. Aug. 30, 2000) (citation and internal quotation marks omitted). "In other words, if those omitted facts would have made a difference to a reasonable investor, they are material," and their omission is misleading. *Ballan v. Wilfred Am. Ed. Corp.*, 720 F. Supp. 241, 249 (E.D.N.Y. 1989).

801 F. Supp. 1134, 1143 (S.D.N.Y. 1992) (positive statements about environmental record required disclosure of adverse facts); *accord Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996) (recognizing a "fiduciary obligation to avoid misleading partial disclosures."); *In re The Topps Co. S'Holder Litig.*, 926 A.2d 58, 77 (Del. Ch. 2007) ("when directors undertake to tell a story they must do it in a nonmisleading manner."). They also had a duty to update any statements they made that subsequently became misleading. *In re Regeneron*, 1995 U.S. Dist. LEXIS 4023, at *6-7 (citing *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993), *cert. denied*, 511 U.S. 1017 (1994)).

Here, Defendants did not discharge these responsibilities. Indeed, although they made statements about numerous issues – including the SEC inquiry, the Release, the net asset value of the shares and the liquidation – they failed to make complete and accurate disclosure about the issues. Specifically, they failed to reveal the scope of the SEC's inquiry or document requests or even whether Falcon is a subject of the inquiry; they omitted facts about claims subject to the Release; they failed to disclose the *current* net asset value of the Company' shares or the value or makeup of its assets and investments; and they failed to disclose the manner in which the liquidation will take place or the impact thereon by the resignation of defendant Islam, who, up until now, was in charge of Falcon and its investments. Likewise, although Defendants purportedly addressed the purpose of the Tender Offer as well as the events leading up to it, they failed to make full disclosure on these issues as well. The omission of this information is misleading because its disclosure is necessary to render Defendants' statements complete and accurate. The statements are also misleading because they downplay the significance of these issues, improperly implying that the omitted information is simply not important enough to be disclosed when that is not the case.[4]

---

[4] For example, the Memorandum dedicates only one sentence to the SEC inquiry (then referred to obliquely as a "U.S. regulatory inquiry"). The second and third supplements to the Memorandum fare slightly

3

For example, in Supplement No. 2 to the Memorandum, dated May 23, 2008, Defendants first revealed that "Citi has received two requests for documents concerning Citi-managed hedge funds in connection with an informal inquiry by the SEC," and that "Citi is responding to those requests and cooperating with the SEC." *See* O'Brien Aff. in Opp. at Ex. K, p.1. This disclosure is misleading because it does not disclose whether Falcon is a subject of the inquiry, the claims under investigation or a description of the documents sought – information that this Court has already acknowledged is relevant to any claims subject to the Release. *See* May 30, 2008 Transcript ("Tr.") at p.29 (observing that information regarding the document requests "tells [investors] what the SEC is sniffing around about."), annexed as Ex. A to the Affidavit of Joseph Russello submitted herewith. It is also misleading because investors are forced to conclude that the inquiry is simply not significant enough to warrant further disclosure. Once Defendants broached these issues, however, they were required to make meaningful disclosure about them. Here, Defendants did not do so.

Defendants' statements regarding the Release are also misleading because, although the Release is described in broad terms, investors cannot ascertain what claims they may have until Defendants describe in further detail their management of the Company's investments, the events leading up to the Tender Offer and the SEC inquiry.[5] For example, as alleged in the Complaint,

---

better, dedicating two sentences to the issue and revealing that the SEC launched the inquiry and that it has directed two requests for documents to Citigroup. *See* Supplement No. 3, at p.2, a copy of which is annexed as Exhibit B to the Russello Aff. These disclosures downplay the inquiry's importance.

[5]     Although Defendants have now disclosed that the pending litigation against Falcon Strategies Two B LLC was voluntarily discontinued, they have not disclosed whether they shared any information with the plaintiff in that case to prompt the discontinuation. That fact, as well as any information disclosed to the plaintiff in that action, should be disclosed to investors. In addition, while Defendants have disclosed in a third supplement to the Memorandum that "[c]ertain affiliates of the Company are currently the subject of Financial Industry Regulatory Authority arbitration proceedings relating to sales practices relating to securities of the Company or its affiliates," this disclosure, standing alone, is insufficient to apprise investors of the claims they may have and could be releasing. *See* Ex. B (Supplement No. 3), at p.2.

Defendants caused Falcon to violate the guidelines set forth in its initial offering memorandum in terms of asset mix and leverage, as well as the offering memorandum's representations regarding the "target allocation" of investments. Nonetheless, investors later could be deemed to have released claims concerning these violations if they tender. In addition, instead of describing general market conditions, Defendants must fully describe the events leading up to the Tender Offer. And, as noted above, they must disclose additional information regarding the SEC inquiry. Defendants' concern that further disclosure would require them to engage in speculation is belied by the fact that they need only disclose the *underlying historical facts* upon which any claims may be based – and not speculate about whether the claims would ultimately prevail.

Defendants have also indicated that the Company will continue to release net asset value information one month after the date for which it is disclosed. Even if the value is literally accurate, disclosure in this manner is misleading because it forces investors to speculate about whether the share price has *already* increased or decreased or the Company's *present* financial condition is improving, while Defendants have this information and can disclose it. *See American Insured Mortg. Investors v. CRI, Inc.*, No. 90 Civ. 6630 (MBM), 1990 U.S. Dist. LEXIS 15787, at *18-19 (S.D.N.Y. Nov. 26, 1990) (a literally true statement may violate the securities laws "if it is presented in a materially misleading manner."). In fact, Defendants presumably considered the current net asset value – and the value of the Release – in determining the Tender Offer consideration, although the Memorandum is silent on the manner in which Defendants calculated the offer consideration.

Moreover, because the net asset value is already outdated on the date it is disclosed, but the Tender Offer requires investors to make a time-sensitive decision, Defendants have a duty to provide investors with the updated value as soon as they are able to do so. While it may have been sufficient in the past to make this disclosure a month after the fact, now that Defendants have presented an

5

offer to investors that expires on a date certain, they must promptly disclose that information. Yet, Defendants have provided no evidence that the net asset value cannot be disclosed earlier than June 28, 2008, which is only two days before the Tender Offer closes.[6] The notion that calculating the net asset value may be complicated or time-consuming does not excuse the omission of this information.

Defendants have also made misleading statements regarding the Company's liquidation, because they have failed to inform investors of the nature and value of the underlying assets that will be sold, the manner in which the liquidation will take place or the impact that defendant Islam's "resignation" will have on the process.[7] Once Defendants touched upon these issues, however, they assumed a duty to make full disclosure about them. Defendants' claim that disclosing the assets would endanger the liquidation process is nothing but sheer speculation.

Finally, because Defendants have addressed the purpose of the Tender Offer, they must disclose information relating to Citigroup's involvement to render their statements complete and accurate. *See, e.g.*, *Arnold v. Society for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1280 (Del. 1994) (partial disclosure of historical events leading up to merger triggered duty to disclose additional facts); *Freedman v. Restaurant Assocs. Indus., Inc.,* No. 9212, 1990 Del. Ch. LEXIS 142, at *24 (Del. Ch. Sept. 21, 1990) (purpose of transaction had to be disclosed "truthfully and candidly"). Thus, Defendants must disclose Citigroup's reason for participating in the Tender Offer.

---

[6] In fact, if, consistent with past practice (*see* Ex. B), Defendants mail the May 28, 2008 net asset value on or about June 28, 2008, investors will not even receive it prior to the Tender Offer's expiration.

[7] Contrary to Defendants' claim that they adequately disclosed the risks of investing in the Company, Falcon's initial offering memorandum demonstrates that they represented to investors that an investment in the Company would "produce a reasonable probability of achieving *targeted absolute returns with low volatility* over an investment horizon of five years," and, more specifically, a conservative "target return of 7% to 10% *absolute* return per annum." *See* O'Brien Aff. in Opp. at Exhibit A, p.8 (emphases added). They also represented that the Company would have "[a] target allocation of no more than 30%" of the portfolio's assets allocated to any one investment strategy – an allocation that has clearly changed. Investors thus had every reason to believe this was a safe investment.

**2.      The Misstatements and Omissions Concern Material Facts**

Contrary to Defendants' contentions, the omitted information at issue is material. The "materiality standard is an objective one, measured from the point of view of the *reasonable investor*," not "the subjective views of [management]." *See Zirn v. VLI Corp.*, 621 A.2d 773, 779 (Del. 1993) (emphasis in original). Thus, whether a fact is material is highly dependent upon the "nature of the decision the investor is being asked to make" as well as the context within which the decision arises. *See, e.g.*, *American Insured*, 1990 U.S. Dist. LEXIS 15787, at *19. Moreover, "the disclosure of even a nonmaterial fact can . . . trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders." *Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996); *see also Shamrock Holdings of Cal., Inc. v. Iger*, No. 1330-N, 2005 Del. Ch. LEXIS 83, at *18 (Del. Ch. June 6, 2005) (same).

Here, Defendants claim that they have provided enough financial information to investors, largely relying upon *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170 (Del. 2000). But that case is distinguishable, as courts in subsequent cases have pointed out. *See, e.g.*, *Erickson v. Centennial Beauregard Cellular LLC*, No. 19974, 2003 Del. Ch. LEXIS 38, at *18 (Del. Ch. Apr. 11, 2003)[8]; *In re Pure Resources, Inc. S'holders Litig*, 808 A.2d 421 (Del. Ch. 2002). In *Pure Resources*, for example, the Delaware Court of Chancery observed that the *Skeen* court believed that a summary of the financial analyses underlying the valuation of a target company "was not material." 808 A.2d at 449. Noting that courts had been ambivalent about the issue until then, the *Pure Resources* court held that investors were entitled to such information, because the mere disclosure of value – *i.e.*, the

---

[8]      The *Erickson* court distinguished *Skeen* on the grounds that "the plaintiffs in *Skeen* did not allege that any of the undisclosed information was *inconsistent with*, or *significantly different from*, the disclosed information . . . ." 2003 Del. Ch. LEXIS 38, at *18 (emphasis in original). Here, undisclosed information regarding the current value of the shares will surely be different than the admittedly outdated disclosed value.

end-result – is insufficient. *Id*. Here, disclosure of the net asset value without the underlying information and methodology that resulted in its calculation is akin to the inadequate disclosure prohibited by *Pure Resources* and its progeny. *See In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203-204 (Del. Ch. 2007) (requiring disclosure of valuation methods and inputs).

*Weiss v. Samsonite Corp.*, 741 A.2d 366 (Del. Ch. 1999), upon which Defendants rely as support for their contention that information regarding the manner in which they arrived at the Tender Offer consideration is immaterial, is also distinguishable. At issue in *Weiss*, for example, was a leveraged recapitalization plan in which a public company sought to acquire 51% of its shares through a cash tender offer. *Id*. at 368. The court held that because "the shareholders would retain their relative equity interest," the manner in which the company's board arrived at the tender offer consideration was irrelevant. *Id*. (observing that it "would make no more difference than it would had the Board simply declared a $40 extraordinary dividend."). Here, however, investors must decide whether to tender all of their shares and release any claims, a decision that goes far beyond merely deciding whether to retain their "relative equity interest."

Moreover, in a recent decision, *Berger v. Pubco Corp.*, No. 3414-CC, 2008 WL 2224107 (Del. Ch. May 30, 2008), a Delaware court required disclosure of the manner in which a majority shareholder and parent company set the consideration offered to minority shareholders in a short-form merger involving a subsidiary, because the issue was material. *Id*. at *3. There, disclosure was particularly important because, like here, the subsidiary was "an unregistered company that made no public filings" and "so little information [wa]s available about the [c]ompany" that detail about how the consideration was set "would significantly change the landscape with respect to the decision of whether or not to trust the price offered by the parent." *Id*. In fact, this concern is perhaps even more prevalent here, because investors must release any claims in order to tender their shares.

Defendants also cannot seriously dispute the materiality of the SEC inquiry, which they clearly thought was important enough to make additional disclosure about in the second supplement to the Memorandum.[9] In fact, Defendants recently made these revised disclosures in the context of at least two other tender offers involving affiliated funds. *See* Exhibits C (p.2) and D to the Russello Aff., reflecting these disclosures.[10] Moreover, as noted above, information regarding the SEC inquiry is necessary to enable investors to ascertain whether any claims are subject to the Release.

Finally, whether the liquidation of the Company was indeed prompted by market conditions (as Defendants portray), or Citigroup's desire to acquire the Company as cheaply as possible (as suggested by the facts), is undeniably material to investors. *See In re Pure Resources*, 808 A.2d at 452 (company's motivation to pursue tender offer was material); *see also Freedman*, 1990 Del. Ch. LEXIS 142, at *24 (upholding a disclosure claim based on management's motivation for revising an acquisition offer, where it was alleged that management "was taking advantage of the [stock] market crash [of 1987] to get more equity in the company for a lower price."). The same holds true of the Company's liquidation plans, which will undoubtedly be affected by defendant Islam's resignation.

**B.    Defendants Have Not Shown That Injunctive Relief Is Inappropriate Because Money Damages Are Available or the Equities Preclude It**

Contrary to Defendants' contentions, the harm that investors will suffer in the absence of injunctive relief is not "purely economic." In fact, they have characterized as "preposterous" the notion that investors could even *attempt* to recover money damages from the Company. *See* Tr. at p.15. The unavailability of money damages is further evidenced by the Company's ongoing

---

[9]    Supplement No. 2 was issued two days after Plaintiff filed its motions for expedited discovery and a preliminary injunction. *See* O'Brien Aff. in Opp. at Exhibit K (Supplement No. 2, dated May 23, 2008).

[10]   Ex. C is Supplement No. 1, dated May 23, 2008, to the memorandum issued in the Falcon Strategies Two B LLC tender offer; Ex. D is page 17 from the memorandum issued in the MAT Five LLC tender offer.

9

liquidation, which is akin to a planned insolvency. *See Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*, No. 99-cv-10517 (HB), 1999 U.S. Dist. LEXIS 16996, at *25 (S.D.N.Y. Nov. 2, 1999) (planned insolvency threatened irreparable harm). Moreover, the value of any claims that investors must release is simply incapable of calculation. In contrast, once the Tender Offer expires, it will be nearly impossible for the Court to restore the parties' to their original positions through money alone, because the Company will have been liquidated and certain investor claims may be barred in the interim due to the expiration of the applicable statute of limitations or by the Release.

Finally, Defendants have simply not alleged an ounce of harm that would result from the supplemental disclosure requested – nor could they, having previously issued three supplements to the Memorandum when it suited them to do so. In contrast, the non-disclosure of the omitted information at issue will surely harm investors, who must decide within the next two weeks whether to tender their shares and release any claims.[11]

### III.  CONCLUSION

For the reasons set forth above and in Plaintiff's opening brief, Plaintiff respectfully requests the Court to grant its motion for a preliminary injunction.

---

[11] The authorities upon which Defendants rely are distinguishable. *See, e.g.*, *Rondeau, v. Mosinee Paper Corp.*, 422 U.S. 49, 59 (1975) (the acquisition of a company's shares by a businessman that failed to make a required regulatory filing disclosing his purpose for acquiring the shares did not implicate the "evils to which the Williams Act was directed"); *Gold Fields Ltd. v. Harmony Gold Mining Co. Ltd.*, No. 04-cv-8767 (RMB), 2004 U.S. Dist. LEXIS 23874 (S.D.N.Y. Nov. 23, 2004) (plaintiff failed to satisfy the elements of injunctive relief and waited too long to move for injunctive relief; money damages were available because the merging companies would survive the first step of the transaction); *Ranger Oil Ltd. v. Petrobank Energy & Res. Ltd.*, No. 00-cv-3139 (SHS), 2000 U.S. Dist. LEXIS 7571 (S.D.N.Y. May 23, 2000) (a public company sought to enjoin a tender offer and asserted insider trading violations but alleged that the transaction failed to maximize value, so the threatened harm was monetarily compensable; the company also could not assert claims on behalf of its shareholders); *Iavarone v. Raymond Keyes Assoc., Inc.*, 733 F. Supp. 727 (S.D.N.Y. 1990) (involved the purchase of preferred stock, where the entity at issue would survive the transaction and be subject to suit; acknowledged that immunity to liability can constitute irreparable harm); *see also Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47 (2d Cir. 1985) (did not involve a tender offer but whether a shareholder properly concealed its purchases under the Williams Act; likelihood of success was not met).

| | |
|---|---|
| DATED:  June 10, 2008 | COUGHLIN STOIA GELLER<br>  RUDMAN & ROBBINS LLP<br>SAMUEL H. RUDMAN<br>ROBERT M. ROTHMAN<br>JOSEPH RUSSELLO |

                                              */s/ Samuel H. Rudman*
                                              SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

11

## CERTIFICATE OF SERVICE

I, Samuel H. Rudman, hereby certify that on June 10, 2008, I caused a true and correct copy of the attached:

> Reply Memorandum of Law In Further Support of Plaintiff's Application For A Preliminary Injunction

to be served (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel of record.

*/s/ Samuel H. Rudman*
Samuel H. Rudman